**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*, <br><br>         *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br>         *Defendants*. | <br><br><br><br> Case No.: 1:25-cv-00471 |

**PLAINTIFFS' RESPONSE TO
ORDER TO SHOW CAUSE REGARDING RELATED CASE DESIGNATION**

Plaintiffs National Urban League ("NUL"), National Fair Housing Alliance ("NFHA"), and AIDS Foundation of Chicago ("AFC") (collectively, "Plaintiffs") hereby respond to the Court's order to show cause why this case should be designated as related to *National Council of Nonprofits v. Office of Management and Budget*, No. 25-cv-239 (D.D.C. filed Jan. 28, 2025) ("*National Council of Nonprofits*").

These cases are properly related under Local Civil Rule 40.5(a)(3) because the two matters share similar operative facts—namely, actions by agency officials to implement and enforce certain executive orders issued by President Trump, which have and will place at significant risk federal funding received by federal contractors and grantees, including the plaintiffs in both actions. Additionally, both matters share similar legal theories: that these agency actions violate the Administrative Procedure Act ("APA"). Therefore, "judicial economy would be served by having the[] matters resolved by the same judge." *Singh v. McConville*, 187 F. Supp. 3d 152, 156 (D.D.C. 2016) (quoting *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010)).

## BACKGROUND

In the first two weeks of President Trump's second term, he issued a flurry of executive orders, including two whose implementation are at issue in both the instant case and *National Council of Nonprofits*. The two executive orders, issued on January 20, 2025, are Executive Order No. 14151, titled "Ending Radical and Wasteful Government DEI Programs and Preferencing" ("Anti-Diversity1 Order") and Executive Order No. 14168, titled "Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" ("Anti-Gender Order").[1] The instant action also concerns a third executive order, issued by President Trump on January 21, 2025, that is not a part of the *National Council of Nonprofits* case: Executive Order No. 14173, titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" ("Anti-Diversity2 Order").[2] In the days following President Trump's issuance of these Executive Orders, his Administration took actions purporting to effectuate their implementation. These agency actions are central to both matters before the Court.

One such action is the issuance of a memorandum titled "Temporary Pause of Agency Grant, Loan, and Other Financial assistance Programs" ("OMB Memo M-25-13"), by the Acting Director of the Office of Management and Budget ("OMB"), Russell Vought, on January 27, 2025.[3] OMB Memo M-25-13 directs agency officials to "complete a comprehensive analysis of all of their Federal financial assistance programs to identify programs, projects, and activities that

---

[1] Exec. Order No. 14151, *Ending Radical and Wasteful DEI Programs and Preferencing*, 90 Fed. Reg. 8339 (Jan. 20, 2025); Exec. Order No. 14168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025).

[2] Executive Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025).

[3] OMB, Memorandum for Heads of Executive Departments and Agencies, M-25-13, Temporary Pause of Agency Grant, Loan, and Other Financial Assistance Programs (Jan. 27, 2025), https://dcg.usc.edu/wp-content/uploads/2025/01/OMB-Memo-Pause.pdf.

may be implicated by any of the President's executive orders."[4]  The memorandum further requires all agency officials to "temporarily pause all activities related to obligation or disbursement of all Federal financial assistance, and other relevant agency actions that may be implicated by the executive orders, including, but not limited to. . ."nongovernmental organizations, DEI, [and] woke gender ideology ."[5]

The scope of paused funds includes any implicated by six executive orders issued by President Trump since January 20.  The first two of the six executive orders are the Anti-Diversity1 Order and the Anti-Gender Order,[6] which the instant plaintiffs are challenging.  In a "Q&A" publicly posted by the Trump Administration, which purportedly clarifies the scope of OMB Memo M-25-13, the Administration reiterated that the funding pause applied to "programs, projects, and activities implicated by the President's Executive Orders, such as ending DEI."[7]

On January 28, 2025, the National Council of Nonprofits, American Public Health Association, and SAGE-Advocacy & Services for LGBTQ Elders filed a complaint "seek[ing] a temporary restraining order" to enjoin OMB Memo M-25-13, including the implementation of the Anti-Diversity1 Order and the Anti-Gender Order, and maintain the status quo.  Complaint at 3, *National Council of Nonprofits*, No. 25-cv-239, ECF No. 1 ("*National Council of Nonprofits* Compl.").  The plaintiffs in *National Council of Nonprofits* alleged that the pause on federal funding "would lead to pauses of important community programs, food and safety assistance, and lifesaving research, among other things: even a short pause could be devastating, decimating organizations, costing lives, and leaving neighbors without the services they need," *National*

---

[4] *Id.* at 2.
[5] *Id.* at 2 (emphasis removed).
[6] *Id.* at 1-2.
[7] OMB, Fact Sheet: OMB Q&A Regarding Memorandum M-25-13 (Jan. 28, 2025), available at https://www.presidency.ucsb.edu/node/376067.

*Council of Nonprofits* Compl. ¶ 32, negatively impact "public health programs that receive federal financial assistance and grants," *National Council of Nonprofits* Compl. ¶ 34, and "jeopardizes [the] ability to continue meeting […] obligations to contractors which [were] already retained." *National Council of Nonprofits* Compl. ¶ 41.  Plaintiffs in *National Council of Nonprofits* also claimed that OMB Memo M-25-13 harmed one of the plaintiffs by "forc[ing] it to abandon, as a condition of federal funding, its viewpoints and beliefs that working to achieve equity in health status is essential not only to [plaintiff's] own mission but to the discipline of public health itself." *National Council of Nonprofits* Compl. ¶ 35.  Named as defendants in the *National Council of Nonprofits* action were OMB and Matthew Vaeth, who was the acting director of OMB when the complaint was filed.

The *National Council of Nonprofits* plaintiffs alleged three claims for relief, each concerning violations of the APA.  *National Council of Nonprofits* Compl. ¶¶ 43-61.  The plaintiffs in *National Council of Nonprofits* argue that the OMB Memo M-25-13 violated the Administrative Procedure Act "through its cursory reasoning, which fails to acknowledge the deep detrimental impact that will likely result from the Memo's precipitous enactment, is not authorized by law, and is contrary to the Constitution."  Mem. of Law in Supp. of Pls.' Mot. for TRO at 3, *National Council of Nonprofits*, No. 25-cv-239, 2025, ECF No. 5-1 ("*National Council of Nonprofits* TRO") at 5; *see also National Council of Nonprofits* Compl. ¶¶ 44, 50, 57.

This Court granted a temporary restraining order in *National Council of Nonprofits*, enjoining the defendants from freezing funding and directing the defendants to release any funds they had paused.  *National Council of Nonprofits v. OMB*, No. 25-cv-239, 2025 WL 368852 (D.D.C. Feb. 3, 2025).  On January 29, 2025, OMB rescinded OMB Memo M-25-13.  However, in a public statement shortly after the rescission, the White House Press Secretary said that OMB

only rescinded OMB Memo M-25-13 to "end any confusion caused by the court's injunction," that the recission of the Memorandum was "NOT a rescission of the federal funding freeze," and that the "President's EO's [sic] on federal funding remain in full force and effect, and will be rigorously implemented."[8]

On February 19, 2025, Plaintiffs in the instant case filed their complaint seeking injunctive and declaratory relief against several defendants, including OMB and the Director of OMB, Russell Vought, for ultra vires executive actions, violations of the First and Fifth Amendments to the U.S. Constitution, and violations of the Administrative Procedure Act. Complaint ¶ 1, *National Urban League v. Trump,* No. 25-cv-471, ECF No. 1 (D.D.C. Feb. 20, 2025) ("*National Urban League* Compl.").

Similar to plaintiffs in *National Council of Nonprofits*, Plaintiffs in this case are non-profits that "receive federal funding in the form of grants and/or contracts and rely on that federal funding to continue carrying out their mission-driven work." *National Urban League* Compl. ¶ 2. Plaintiffs brought this suit to challenge Anti-Diversity1 Order, Anti-Gender Order, Anti-Diversity2 Order, "*and related agency actions*." *National Urban League* Compl. ¶ 3 (emphasis added). Such agency actions necessarily include, but are not limited to, OMB Memo M-25-13.

Like the plaintiffs in *National Council of Nonprofits*, each of the Plaintiffs here is concerned that "core business activities will be hindered and its mission will be frustrated. . . if it is punished for such speech by a termination of vital federal funds," *National Urban League* Compl. ¶ 176, that loss of federal funds would "impair [their] ability to engage in critical public health advocacy," *National Urban League* Compl. ¶ 194, and that "it would no longer be eligible

---

[8] Karoline Leavitt (@PressSec), X (Jan. 29, 2025, 1:40 PM), https://x.com/PressSec/status/1884672871944901034.

for federal funding if it stays true to its history and purpose." *National Urban League* Compl. ¶ 155. Also similar to *National Council of Nonprofits*, Plaintiffs allege that government agencies "have already taken action to implement these Executive Orders" and "to intimidate, threaten, and ultimately stop Plaintiffs from performing services central to their missions; chill and censor their speech, advocacy, and expressive activity based on content and viewpoint; and jeopardize federal grants and contracts that are critical for Plaintiffs to accomplish their mission-driven work." *National Urban League* Compl. ¶ 5.

## ARGUMENT

Civil cases are deemed "related" under Local Civil Rule 40.5 when the earliest related case is still pending on the merits[9] in the District Court and they: "(i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent." LCvR 40.5(a)(3).

Plaintiffs in both the instant case and *National Council for Nonprofits* are similarly situated, non-profit organizations seeking declaratory and injunctive relief from this Court relating to President Trump's executive orders banning DEIA and the implementation of those orders. Central to both cases are allegations by both sets of plaintiffs that the government's actions with respect to its implementation of certain executive orders, including executive orders pertaining to DEIA, violate the Administrative Procedure Act. Given the similarity between the allegations made by the plaintiffs in these cases, there is substantial factual and legal overlap, such that similar determinations concerning the defendants' conduct will be required to resolve the case. *See Singh*, 187 F. Supp. 3d at 156.

---

[9] *National Council for Nonprofits* is "still pending on the merits in the District Court" as is required by Local Civil Rule 40.5(a)(3).

For example, the defendants in *National Council for Nonprofits* are likewise defendants in the instant case and both sets of plaintiffs are suing for the same reasons—to enjoin implementation and enforcement of recently-issued executive orders based, at least in part, on claims that the implementation of those orders violate the Administrative Procedure Act.  Although the instant lawsuit alleges more claims than *National Council for Nonprofits*, there is still a substantial overlap between their claims.  Importantly, complete overlap of facts is not necessary to satisfy the requirements of Local Civil Rule 40.5(a)(3).  *See, e.g.*, *Assiniboine and Sioux Tribe of Fort Peck Indian Reservation v. Norton*, 211 F. Supp. 2d. 157, 160 (D.D.C. 2002) ("[A]lthough differences may exist between the instant matter and [the requested related case], there are clearly issues of fact that are common to both cases that are sufficient to reject defendants' position.").

Because of the substantial overlap between the two cases, they are "related."  Resolution of the two cases will involve resolution of common factual and legal questions, such as whether OMB Memo M-25-13 was a final agency action, whether the agency action was contrary to the constitution infringing upon plaintiffs' First Amendment rights, and whether it caused similar harm to the similarly-situated Plaintiffs.  *See, e.g.*, *id.* at 157; *see also Tripp v. Exec. Off. of the President*, 194 F.R.D. 340, 343 (D.D.C. 2000) (finding cases related where there is a "substantial nexus" of issues of fact).

The overlap in legal claims reflects and underscores the substantial overlap between the two cases that causes them to be related.  The plaintiffs in *National Council for Nonprofits* allege that because OMB Memo M-25-13 "conditions the continued receipt of billions of dollars or more in federal funding on recipient's exercise of their First Amendment rights of free expression and association, it is regulated by the First Amendment."  *National Council of Nonprofits* Compl. ¶ 53. Plaintiffs in the instant case similarly challenge the Executive Orders and related agency action,

including two orders explicitly implicated by OMB Memo M-25-13, for largely the same reasons. Like in *National Council for Nonprofits,* plaintiffs here challenge these executive orders on the grounds that they "impose an unconstitutional condition on Congressional funding by requiring Plaintiffs, as a condition of receiving public grants and contracts to relinquish their First Amendment rights of free speech by refraining from speaking on a certain subject, *i.e.*, support for and endorsement of DEIA." *National Urban League* Compl. 1 ¶ 252. Thus, plaintiffs' claims in *National Council for Nonprofits* and the instant case are rooted in alleging a similar violation of the Administrative Procedure Act.

Further, both cases allege that the implementation of the at-issue executive orders are arbitrary and capricious, contrary to the Constitution, and exceed statutory authority under the Administrative Procedure Act. This overlap in legal claims reflects and underscores the relatedness of the two cases. Central to both cases are the government's Anti-Diversity1 Order and Anti-Gender Order and subsequent agency actions to implement those orders, including OMB Memo M-25-13. Both sets of plaintiffs also claim that the agency actions implementing the at-issue orders violate the Administrative Procedure Act. Because plaintiffs bring similar claims for resolution, designation as related is proper. *See, e.g.*, *Singh* 187 F. Supp. 3d at 156 (finding that designation of cases as related was proper because both cases challenged the same regulations on the same grounds).

Finally, the "cases do indeed share common factual issues and arise out of a common event or transaction. . . such that judicial economy would be served by having these matters resolved by the same judge." *See Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010). Indeed, both lawsuits share the same "ultimate goal" of protecting their federal funding from the unwarranted and unlawful conditions set forth in the at-issue executive orders, as well as

the unlawful implementation of those orders, and rely on overlapping Administrative Procedure Act claims to achieve that goal. *See Assiniboine and Sioux Tribe of Fort Peck Indian Reservation* 211 F. Supp. 2d at 158 (determining two cases were related where both sets of plaintiffs shared the ultimate goal of securing an accounting of their funds held in trust by the United States).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deem this case related to *National Council of Nonprofits v. OMB* under Local Civil Rule 40.5.

Dated:  February 20, 2025

Respectfully submitted,

/s/ *Jin Hee Lee*
Jin Hee Lee, DC Bar No. 1740850
Gabriel Diaz, DC Bar No. 991618
Donya Khadem, DC Bar No. 1719557*
Avatara Smith-Carrington, DC Bar No. 90013196
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org
gdiaz@naacpldf.org
dkhadem@naacpldf.org
acarrington@naacpldf.org

Leah Wong*
Alexsis Johnson*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
lzwong@naacpldf.org
amjohnson@naacpldf.org

Camilla B. Taylor, DC Bar No. IL0098

Stacey K. Grigsby, DC Bar No. 491197
Sarah E. Harrington, DC Bar No. 219218*
Alison S. DiCiurcio, DC Bar No. 1601410*
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
sgrigsby@cov.com
sharrington@cov.com
adiciurcio@cov.com

Nicholas E. Baer, DC Bar No. 1672517*
James H. Fitch, DC Bar No. 1780894*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
nbaer@cov.com
jhfitch@cov.com

Kenneth D. Upton, Jr., DC Bar No. 1658621
LAMBDA LEGAL DEFENSE AND
      EDUCATION FUND, INC.
3656 N Halsted St
Chicago, IL 60613
(312) 605-3225
CTaylor@lambdalegal.org
KUpton@lambdalegal.org

Jose Idio Abrigo*
LAMBDA LEGAL DEFENSE AND
      EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(646) 307-7406
JAbrigo@lambdalegal.org

Pelecanos*
LAMBDA LEGAL DEFENSE AND
      EDUCATION FUND, INC.
800 South Figueroa Street, Suite 1260
Los Angeles, CA 90017**
(323) 370-6909
Pelecanos@lambdalegal.org

 *Admission Pro Hac Vice forthcoming
**Address for mailing purposes only