**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al., | |
| *Plaintiffs,* | |
| v. | Civil Action No. 25-cv-00471 |
| DONALD J. TRUMP, et al., | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO DO NO HARM'S MOTION TO INTERVENE AS DEFENDANT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................................ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................. 4

I.      DNH Lacks Article III Standing. ...................................................................... 4

II.     DNH Has Not Met Its Burden to Demonstrate It Is Entitled to Intervene as of
        Right.................................................................................................................. 5

        A.      DNH Lacks Any Legally Protectable Interest Relating to Plaintiffs'
                Challenge to the Executive Orders. ..................................................... 6

        B.      DNH's Prior Litigation Underscores Its Lack of Protectable Interest. ................... 8

        C.      DNH's Interests (To the Extent They Exist) Will Be Adequately
                Represented by Defendants................................................................. 11

III.    The Court Should Deny DNH Permissive Intervention as Prejudicial............................ 13

CONCLUSION......................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*100Reporters LLC v. U.S. Dep't of Justice*,
   307 F.R.D. 269 (2014) ...................................................................................................14

*Am. Freedom Law Ctr. v. Obama*,
   821 F.3d 44 (D.C. Cir. 2016) ...........................................................................................4

*American Soc'y. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*,
   659 F.3d 13 (D.C. Cir. 2011) ...........................................................................................8

*Biden v. U.S. Internal Revenue Serv.*,
   No. 23-CV-2711, 2024 WL 4332072 (D.D.C. Sept. 27, 2024) ........................................6

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ...........................................................................................12

*Campaign Legal Center v. FEC*,
   1:21-cv-00406-TJK, 2022 WL 1978727 (D.D.C. Jun. 6, 2022) ......................................10

*Coalition to Defend Affirmative Action v. Granholm*,
   501 F.3d 775 (6th Cir. 2007) ...........................................................................................6

*Comm. for Monetary Reform v. Bd. of Governors of Fed. Rsrv. Sys.*,
   766 F.2d 538 (D.C. Cir. 1985) .......................................................................................11

*Crossroads Grassroots Pol'y Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015)* ................................................................................4, 5, 8

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
   717 F.3d 189 (D.C. Cir. 2013) .........................................................................................4

*Diamond v. Charles*,
   476 U.S. 54 (1986)............................................................................................................6

*Dimond v. D.C.*,
   792 F.2d 179 (D.C. Cir. 1986) .......................................................................................12

*Do No Harm v. Am. Chemical Society*,
   No. 1:25-cv-638 (D.D.C., Compl. filed Mar. 5, 2025) ...................................................10

*Do No Harm v. Pfizer, Inc.*,
   126 F. 4th 109 (2d Cir. 2025) ..........................................................................................9

*Do No Harm v. Pfizer, Inc.*,
   No. 1:22-cv-07908 (S.D.N.Y., Compl. filed Sept. 15, 2022) ............................................9, 10

*Do No Harm v. SOMOS*,
   No. 1:24-cv-03457 (D.D.C., Compl. filed Dec. 11, 2024) ......................................................10

*Do No Harm v. Univ. of Colorado*,
   No. 1:24- cv-03441 (D. Colo., Joint Stipulation entered Feb. 20, 2025)................................10

*Do No Harm v. Univ. of Wash. Sch. Of Med.*,
   No. 2:24-cv-01678 (W.D. Wash., Compl. filed Oct. 15, 2024)................................................10

*Do No Harm v. Vituity*,
   No. 3:23-cv-24746 (N.D. Fl. Compl. filed Dec. 8, 2023)........................................................10

*EEOC v. Nat'l Children's Ctr.*,
   146 F.3d 1042 (D.C.Cir.1998) .................................................................................................13

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024).....................................................................................................................8

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) .............................................................................................5, 12

*Garcia v. Vilsack*,
   304 F.R.D. 77 (2014) ...............................................................................................................14

*Jones v. Prince George's Cnty., Maryland*,
   348 F.3d 1014 (D.C. Cir. 2003) ...........................................................................................5, 12

*Karsner v. Lothian*,
   532 F.3d 876 (D.C. Cir. 2008) ..................................................................................................9

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*,
   No. 1:24-cv-01702, 2025 WL 631864 (D.D.C. Feb. 26, 2025)*.........................................4, 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................................4

*Nat'l Taxpayers Union, Inc. v. United States*,
   68 F.3d 1428 (D.C. Cir. 1995) ...................................................................................................8

*Northland Family Planning Clinic, Inc. v. Cox*,
   487 F.3d 323 (6th Cir. 2007) .................................................................................................7, 8

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) .................................................................................................14

*Old Dominion Elec. Coop. v. FERC*,
  892 F.3d 1223 (D.C. Cir. 2018)..................................................................4

*Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*,
  338 F.R.D. 1 (D.D.C. 2021)......................................................................4

*Sierra Club v. Van Antwerp*,
  523 F.Supp.2d 5 (D.D.C. 2007)..................................................................5

*United States v. Am. Tel. & Tel. Co.*,
  642 F.2d 1285 (D.C. Cir. 1980)..................................................................6

*United States v. State of New York*,
  820 F.2d 554 (2d Cir. 1987)....................................................................13

*Wisconsin Educ. Ass'n Council v. Walker*,
  705 F.3d 640 (7th Cir. 2013) ....................................................................6

*Yocha Dehe v. U.S. Dep't of the Interior*,
  3 F.4th 427 (D.C. Cir. 2021)....................................................................7

**Other Authorities**

Executive Order No. 14,151, *Ending Radical and Wasteful Government DEI
  Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025) ...........................1

Executive Order No. 14,168, *Defending Women From Gender Ideology
  Extremism and Restoring Biological Truth to the Federal Government*, 90
  Fed. Reg. 8,615 (Jan. 20, 2025) ..........................................................1, 2

Executive Order No. 14,173, *Ending Illegal Discrimination and Restoring Merit-
  Based Opportunity*, 90 Fed. Reg. 8,633 (Jan. 21, 2025)......................................1

Fed. R. Civ. Proc. 24*............................................................... *passim*

iv

## INTRODUCTION

Plaintiffs National Urban League ("NUL"), National Fair Housing Alliance ("NFHA"), and AIDS Foundation Chicago ("AFC") (collectively, "Plaintiffs") oppose the motion of Do No Harm ("DNH") for leave to intervene as a defendant in this matter.

DNH's motion fails to meet the requirements for intervention as of right under Rule 24(a) because DNH lacks a legally protected interest that is subject to this litigation, lacks Article III standing, and has failed to rebut the presumption that Defendants already adequately represent any interest it may assert. Indeed, DNH asserts solely generalized grievances and ideological opposition to principles of diversity, equity, inclusion, and accessibility ("DEIA"), and equality for transgender people. These are not cognizable injuries traceable to this litigation and not redressable by court order. The Court also should deny permissive intervention under Rule 24(b) because intervention would unduly prejudice parties by introducing extraneous policy issues not relevant to claims raised in the complaint and would unnecessarily complicate this litigation.

## BACKGROUND

Plaintiffs challenge three executive orders issued by President Trump that violate their First and Fifth Amendment rights, violate the Administrative Procedure Act, and exceed constitutional limits on executive power. Specifically, Plaintiffs challenge Executive Order No. 14,151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025) ("Anti-Diversity1 Order"); Executive Order No. 14,168, *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ("Anti-Gender Order"); and Executive Order No. 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8,633 (Jan. 21, 2025) ("Anti-Diversity2 Order") (collectively, the "Executive Orders").

These Executive Orders have caused and will cause immediate irreparable harm to Plaintiffs and the communities they serve. The Anti-Gender Order decrees that an entire group of people (transgender people) do not exist and makes clear that organizations such as Plaintiffs, who advocate for their civil rights, will be targeted and penalized. Similarly, the Anti-Diversity Orders unlawfully bar speech that endorses ideas that the Administration disfavors—including principles of diversity, equity, inclusion, and accessibility for all.

The Executive Orders terminate federal funding for organizations that engage in speech that does not align with the Administration's views and subject such organizations to civil investigations and heightened penalties. Plaintiffs receive federal funding and are regulated by the Executive Orders. They already have received notices terminating their federal funding pursuant to these Executive Orders and have received instructions to censor their speech, including to delete all references to transgender people. The injuries inflicted upon Plaintiffs by the challenged Executive Orders are profound, threatening to prevent them from performing vital and often life-saving social services critical to the wellbeing of the communities they serve. Compl. ¶¶ 5–6, 9, 11–13.

By contrast, proposed intervenor DNH has no legally protectable interest at stake in this litigation. DNH and its members will remain in the same position as any other members of the general public no matter how Plaintiffs' lawsuit is resolved. DNH does not assert that it or its members currently or would otherwise receive federal funding subject to the Executive Orders or are otherwise regulated by the Executive Orders and related agency actions. DNH does not point to any instance where the organization or any of its members has had any interaction whatsoever with Plaintiffs, let alone experienced discriminatory actions by Plaintiffs or discrimination that is the result of the federal funding Plaintiffs receive. And DNH does not assert that it or its

members have pending litigation asserting claims seeking to enforce the Executive Orders, that it or its members could enforce the Executive Orders, that it or its members have ever done so, or that it or its members intend to do so in the future.

Instead, DNH seeks to introduce legal arguments about policy questions that extend well beyond the scope of this litigation. DNH's motion demonstrates that its primary grievance is an abstract *ideological* opposition to Plaintiffs' efforts encouraging diversity, equity, inclusion, and accessibility, and their efforts advancing the rights of transgender people, including programs specifically enacted or funded by Congress. To justify its intervention, DNH points to lawsuits it has filed under various civil rights statutes challenging individual DEIA efforts by entities that are not parties to this lawsuit under legal theories not raised or otherwise at issue here. None of these lawsuits asserts claims or defenses under these Executive Orders or otherwise arises from the Executive Orders. In short, DNH lacks any legally protectable interest in this litigation, and lacks Article III standing.

As DNH's motion makes plain, DNH does not intend to limit itself to defending the Executive Orders' legality and constitutionality with respect to the claims actually brought by Plaintiffs but instead seeks to provide argument about how to follow and enforce existing civil rights laws, the advisability of DEIA initiatives as a part of applying those very laws, and anti-LGBTQ bias policies in the abstract. All of these arguments are untethered to the particular constitutional and statutory questions before this court. And, to the extent DNH simply wishes to defend the policies embodied in the Executive Orders, it has not shown that the existing Defendants will not adequately represent that point of view.

Were DNH permitted to intervene in the instant case, it would broaden the case far beyond the scope of the preliminary injunction and complaint, introduce unrelated ideological and policy

disputes, and sidetrack the Court from the critical constitutional and procedural claims at hand. Intervention by DNH is neither necessary nor appropriate to address the claims presented by Plaintiffs and should therefore be denied.

## ARGUMENT

### I.    DNH Lacks Article III Standing.

DNH erroneously asserts that it need not satisfy Article III standing but ignores that "binding D.C. Circuit precedent requires . . . all intervenors, including putative *defendant*-intervenors," to establish Article III standing in order to intervene, which DNH cannot do. *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 1:24-cv-01702, 2025 WL 631864, *3 (D.D.C. Feb. 26, 2025) (citing *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013), and *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015)) (emphasis in original); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018) (because intervenors "become full-blown parties to litigation" this Circuit's "settled precedent" requires "that all intervenors must demonstrate Article III standing"). Article III standing is crucial; otherwise, "any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 316, quoting *Deutsche Bank Nat'l Trust Co.*, 717 F.3d at 195 (Silberman, J., concurring); *see also Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 4 (D.D.C. 2021).

"[T]he 'irreducible constitutional minimum of standing contains three elements': '(1) injury-in-fact, (2) causation, and (3) redressability.'" *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 48 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  As discussed *infra*, DNH has not demonstrated a concrete and particularized injury arising

specifically from the challenged Executive Orders, nor has it provided evidence showing it is

uniquely harmed beyond any generalized impact felt by the broader public. By DNH's own

admission, DNH seeks intervention to raise entirely separate and unrelated issues concerning its

ideological objections to DEIA and anti-bias practices rather than issues related to the legality

and constitutionality of the Executive Orders. For example, DNH states that it intends to argue

that "DEI initiatives" independently violate Title VI and a host of other federal

nondiscrimination statutes not at issue in this litigation, unrelated to the legality and

constitutionality of the challenged Executive Orders. *See, e.g.*, DNH Mot. to Intervene, ECF No.

31, ("Mot.") at 13. DNH's application for intervention thus amounts to a request for an advisory

opinion about questions not before the court and which DNH lacks standing to raise.

## II.    DNH Has Not Met Its Burden to Demonstrate It Is Entitled to Intervene as of Right.

DNH cannot satisfy the requirements to warrant intervention as of right. Under Federal

Rule Civil Procedure 24(a), a putative intervenor may intervene as of right only when it (1)

makes a timely motion; (2) has an interest relating to the property or transaction that is the

subject of the action; (3) is so situated that the disposition of the action may as a practical matter

impair or impede the applicant's ability to protect that interest; and (4) where its interests are not

adequately represented by the existing parties. Fed. R. Civ. P. 24(a); *see also Sierra Club v. Van

Antwerp*, 523 F. Supp. 2d 5, 6 (D.D.C. 2007). All four factors must be satisfied. *Las Americas

Immigrant Advoc. Ctr.*, 2025 WL 631864, at *2 (citing *Jones v. Prince George's Cnty.,

Maryland*, 348 F.3d 1014, 1017 (D.C. Cir. 2003)). The second factor requiring a legally

protected interest is identical to demonstrating Article III standing. *See Crossroads Grassroots

Pol'y Strategies*, 788 F.3d at 316; *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir.

2003). Because DNH lacks any legally protectable interest, let alone Article III standing, and

because Defendants already adequately represent any interest DNH might assert, the court

should deny intervention as of right.

A.    **DNH Lacks Any Legally Protectable Interest Relating to Plaintiffs' Challenge to the Executive Orders.**

DNH lacks any protectable interest in this litigation. Under Rule 24(a)(2), a putative

intervenor must assert a "significantly protectable interest." *Diamond v. Charles,* 476 U.S. 54, 68

(1986); *see also Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013). A

putative intervenor must establish that it has "a legal interest as distinguished from interests of a

general and indefinite character." *Biden v. U.S. Internal Revenue Serv*., No. 23-CV-2711, 2024

WL 4332072, at *10 (D.D.C. Sept. 27, 2024) (*citing United States v. Am. Tel. & Tel. Co.*, 642

F.2d 1285, 1292 (D.C. Cir. 1980)).

DNH has not met this standard. To start, DNH mischaracterizes the core issues at stake in

this litigation. Plaintiffs' claims concern the constitutionality and lawfulness of the Executive

Orders, which terminate Plaintiffs' federal funding. DNH asserts that its "interests are equal and

opposite to Plaintiffs" because it supports the view that equality means eliminating DEIA and

anti-LGBTQ-bias policies. Mot. at 8. But these are mere policy arguments about the merits of

DEIA and anti-LGBTQ-bias initiatives that do not relate to the specific constitutional and APA

questions posed, and are not a sufficient interest for the purposes of intervention. *Coalition to*

*Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007) (an organization

supporting Michigan's constitutional ban on considering race, sex, color, ethnicity, or national

origin in public decisions lacked a substantial legal interest to intervene in a challenge to the

amendment, as its interest was purely ideological).

Despite DNH's claims that its "interests are 'equal and opposite to Plaintiffs,'" Mot. at 8,

DNH is not regulated by the Executive Orders. DNH does not assert that it or its members

receive federal funding, are "the direct subject of" the Executive Orders, or are otherwise regulated by the Executive Orders and related agency implementation. *Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 431 (D.C. Cir. 2021). And DNH does not assert that it or its members have pending litigation asserting claims seeking to enforce the Executive Orders, that it could plausibly enforce the Executive Orders, that it or its members have ever done so, or that it or its members intend to do so in the future.

DNH claims it has a significantly protectable interest warranting intervention as of right because it has "prominently supported the executive orders at the center of this action." Mot. at 8. It argues that courts routinely allow public-interest organizations to intervene when they have supported the measures whose legality they seek to defend. *Id.* at 9. However, DNH's argument overstates its actual involvement and misapplies the relevant legal standard. A cursory review of DNH's alleged "support" demonstrates merely generalized ideological agreement, not the vital participation necessary to justify intervention.

In cases permitting public interest organizations with significant prior involvement in the enactment of a law or regulation to intervene under Rule 24(a), courts have required that the intervenor be a "vital participant in the political process" leading to adoption. *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 344–45 (6th Cir. 2007). DNH's evidence of involvement, calling for action against DEI programs, promoting executive orders, and "chart[ing] a path forward," amounts only to opinion pieces, short blog posts, and informational web pages. Mot. at 8–9. Such generalized advocacy does not approach "vital participa[tion]."[1]

---

[1] DNH's "call for President Trump to take action against DEI programs in the federal government" is a link leading to a page on its website that itself includes a link to an opinion piece in the Federalist attributed to Daniel Lennington, who directs the Equality Under the Law Project at the Wisconsin Institute for Law and Liberty. Its claim to have promoted the Executive Orders is a link to a 309-word blog post on its website merely reporting on the passage of (continued…)

Indeed, *Northland Family Planning Clinic* underscores why DNH's claim fails. There, a proposed intervenor with far greater direct involvement and clear ideological opposition to the plaintiff's claims lacked sufficient interest for intervention. The Sixth Circuit noted significantly that mere ideological interest, without direct regulation of the intervenor's conduct, is insufficient. *Northland Family Planning Clinic*, 487 F.3d at 344-45. If DNH's minimal support suffices, nearly any organization commenting on or reporting legislation could intervene as of right.

### B.    DNH's Prior Litigation Underscores Its Lack of Protectable Interest.

DNH's principal argument seems to be that it is ideologically opposed to Plaintiffs' missions and, because of the Executive Orders, it will not need to file more lawsuits and devote more resources to opposing those missions. But "the litigation expenses rationale already has been rejected in this Circuit." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 317. DNH's "diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice" that is insufficient to demonstrate an interest. *American Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011); *see Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C. Cir. 1995).

Even if DNH could attempt to assert *some* protected interest in litigating, it also has not demonstrated an interest here. An organization cannot "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 370 144 (2024). DNH can only guess at

---

"several executive orders targeting diversity, equity, and inclusion (DEI) initiatives in the federal government." Its claim to have "charted a path forward" when executive orders "faced lawsuits" is merely a link explaining certain lawsuits to its members.

what funds will be affected for which organizations—let alone be able to connect it to its own members' purported harms and resulting lawsuits defending those speculative harms.

In short, DNH and its members stand in the same shoes as anyone else with their own respective viewpoints about DEIA and the rights of transgender people. Because DNH lacks a legally protected interest that will be impaired absent intervention, and lacks Article III standing, it is not entitled to intervene as of right. *See Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). The cases on which DNH relies as evidence of its investment in opposing DEIA principles and civil rights for transgender people merely underscore DNH's lack of any protectable interest here. For example, although DNH claims it has litigated many cases after its members "regularly find themselves on the losing end of DEI policies," Mot. at 4, not a single lawsuit cited by DNH asserts claims under these Executive Orders or otherwise arises under the Executive Orders. Many of the complaints to which DNH points concern legal matters that already have been resolved. The outcomes in the remaining cases will be completely unaffected no matter how Plaintiffs' claims in the instant case are resolved.

For example, DNH points to *Do No Harm v. Pfizer, Inc.*, No. 1:22-cv-07908 (S.D.N.Y., Compl. filed Sept. 15, 2022), in which DNH challenged a fellowship program created to increase minority representation among medical professionals at Pfizer. DNH brought statutory civil rights claims under various federal, state, and city anti-discrimination laws. The case does not involve federal defendants, let alone constitutional or APA claims, was filed years before the challenged Executive Orders were issued and does not touch upon them, and DNH's standing to bring the lawsuit remains in dispute. *See Do No Harm v. Pfizer, Inc.*, 126 F. 4th 109, 114 (2d Cir. 2025). The outcome in the instant matter will have no impact on its resolution.

DNH also cites *Do No Harm v. Univ. of Wash. Sch. Of Med.*, No. 2:24-cv-01678 (W.D. Wash., Compl. filed Oct. 15, 2024), a challenge to the University of Washington's networking resource for students of color. DNH asserted statutory claims under civil rights statutes and an equal protection claim, but again, the case involved no federal defendants and predates the Executive Orders at issue here. The case has now been settled, and thus resolution of the instant litigation will have no impact on it. *Do No Harm*, No. 2:24-cv-01678 (Joint Stipulation of Dismissal filed Jan. 1, 2025), ECF 38.

Similarly, DNH points to *Do No Harm v. Vituity*, No. 3:23-cv-24746 (N.D. Fl., Compl. filed Dec. 8, 2023) and *Do No Harm v. Univ. of Colorado*, No. 1:24-cv-03441 (D. Colo., Joint Stipulation entered Feb. 20, 2025), ECF 20, both of which have been settled, *Do No Harm v. SOMOS*, No. 1:24-cv-03457 (D.D.C., Compl. filed Dec. 11, 2024) (asserting solely equal protection and Section 1981 claims), and *Do No Harm v. Am. Chemical Society*, No. 1:25-cv-638 (D.D.C., Compl. filed Mar. 5, 2025) (asserting solely Section 1981 and Title VI counts), none of which involves claims brought under the Executive Orders, common parties, or issues relating to conditions imposed on federal contractors and grantees, and all of which will be completely unaffected by resolution of the instant case. In sum, DNH does not identify a single pending case that would be jeopardized or otherwise affected by the claims that Plaintiffs raise in this case.

Moreover, even if any of DNH's current cases did involve the legality or constitutionality of the Executive Orders, and they do not, DNH would remain free to litigate those questions *in those cases. See*, *e.g.*, *Campaign Legal Center v. FEC*, 1:21-cv-00406-TJK, 2022 WL 1978727, at *3 (D.D.C. Jun. 6, 2022). Any findings and conclusions from this Court in this case would not be preclusive, but merely persuasive. *Id.*

As a secondary theory, DNH appears to argue that its members will, as a general matter, experience "greater discrimination" if the Executive Orders are not upheld. Mot. at 11. But DNH does not assert that it or any of its members has had any interaction whatsoever with *Plaintiffs*, let alone experienced discrimination in any way or discrimination that was specifically the result of Plaintiffs' federally funded services or their work to combat racism, sexism, and anti-LGBTQ bias. DNH's speculation that there may be more or less societal discrimination with or without the Executive Orders is "general assertion" that is "clearly inadequate" to demonstrate a legally protected interest. *Comm. for Monetary Reform v. Bd. of Governors of Fed. Rsrv. Sys.*, 766 F.2d 538, 542 (D.C. Cir. 1985).

Instead, DNH is asserting a generalized grievance against DEIA and anti-LGBTQ-bias programs that is undifferentiated from the interest of members of the general public. To warrant intervention as a matter of right, the interest asserted must not only be specific and legally cognizable but must also reflect particularized harm distinct from general societal or ideological interests. DNH fails to provide any distinct factual circumstances or legal arguments demonstrating how it or its members suffer unique harm that elevates their interest above that of any other member of the public who might similarly oppose or support the Executive Orders at issue. Without demonstrating individualized harm or a specialized legal stake, DNH's asserted interest remains general, indefinite, and insufficient for intervention as of right under the stringent standards established by the courts.

## C.    DNH's Interests (to the Extent They Exist) Will Be Adequately Represented by Defendants.

DNH also fails to establish that its purported interests will not be adequately represented by Defendants. This litigation focuses on the constitutionality and legality of three Executive Orders and actions that Defendants have taken to implement them. DNH's fear that the

Department of Justice, as the representative of the federal government's interests, will fall short on representing its own interests is entirely conjectural. For example, DNH speculates that the government will "feel pressured not to describe certain DEI programs as illegal," Mot. at 13, without offering factual grounding or reliable indicators to demonstrate that the Department of Justice would act contrary to its obligations. This assertion is further weakened by the explicit language of the Executive Orders themselves, which unequivocally characterize DEIA programs as illegal without exception. Thus, DNH's conjecture about potential governmental reluctance is not only unsubstantiated but also inconsistent with the directives of the Orders.

It is, at a minimum, incumbent on an intervenor to demonstrate that the Department of Justice cannot handle this particular case against the federal government. Courts have recognized that broad public interests, such as the constitutionality and legality of government actions, are adequately represented by governmental entities charged with enforcing and defending laws and regulations, and it is only when an intervenor establishes a more "narrow and 'parochial'" interest that the government's representation may be inadequate. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (quoting *Dimond v. D.C.*, 792 F.2d 179, 192–193 (D.C. Cir. 1986)). Here, DNH has identified no particularized interest whatsoever in enforcement of the Executive Orders as to Plaintiffs or anyone else. They merely present a distinction between the arguments they would like to make and the arguments they anticipate from the Department of Justice. However, if "quibbles over litigation tactics" or a "disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." *Jones*, 348 F.3d at 1020 (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181 (2d Cir. 2001)). Because DNH has not articulated any narrower or more individualized interest beyond the general interests shared by the broader public, this

deficiency underscores DNH's failure to overcome the presumption that the government's representation of public interest is adequate. Absent this articulation, DNH's attempt to intervene fails to establish it will not be adequately represented. *United States v. State of New York*, 820 F.2d 554, 558 (2d Cir. 1987) (when government, in its role as sovereign, is party to a lawsuit, it is presumed to adequately represent the interests of its citizens).

III.    **The Court Should Deny DNH Permissive Intervention as Prejudicial.**

For similar reasons, the court should deny DNH's request for permissive intervention as well. An alternative to "intervention as of right" is "permissive intervention," whereby a court may permit an applicant to intervene if it makes a timely motion, it has a claim or defense, and that claim or defense shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b). Permissive intervention is an "inherently discretionary enterprise." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

DNH lacks a claim or defense that shares a common question of law or fact with this action. Indeed, DNH admits it seeks intervention to introduce new issues unrelated to the claims asserted by Plaintiffs in this case, Mot. at 4–5, which will delay the litigation and expend unnecessary resources. DNH never even expresses an interest in addressing the substantive claims Plaintiffs have actually brought in challenging the Executive Orders' legality and constitutionality under the First Amendment, Fifth Amendment, Fourteenth Amendment, or Administrative Procedure Act—all of which would be helpful if it were going to provide the Court or the government any inclination of what it hopes to add to this case. All DNH appears to seek from intervention is to add yet another ideological viewpoint on DEIA with no connection to Plaintiffs or Defendants in this case.

A key consideration for permissive intervention is its alignment with "efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). Accordingly, intervention may be denied if it would "unduly delay or prejudice the adjudication of the original parties' rights." *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269 (2014). Courts also may reject intervention if it would disadvantage existing parties, prolong the litigation, or introduce unnecessary complexity by injecting new issues. *Garcia v. Vilsack*, 304 F.R.D. 77 (2014).

As outlined *supra,* the gravamen of DNH's proposed intervention is its desire to share its philosophical opinions about how to achieve DEIA and antidiscrimination efforts, and nothing more. DNH admits that its interest is in making novel claims about civil rights statutes not at issue in this case, and that it will introduce other "unique arguments, including that federal law not only permits but requires the government to withdraw funds from organizations who discriminate based on race." Mot. at 1–2. These policy arguments about the effectiveness and parameters of addressing diversity, equity, accessibility, and anti-LGBTQ-bias initiatives do not relate to the specific constitutional and APA questions posed by Plaintiffs. DNH's attempts to shift the focus toward policy debates unrelated to the specific constitutional and APA questions posed with respect to the three Executive Orders, will overly complicate the case and prejudice the Plaintiffs by delaying resolution to issues regarding a significant portion of their funding. The Court should deny DNH's motion for intervention as of right and permissive intervention.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Do No Harm's motion to intervene.

Dated: March 10, 2025

Respectfully submitted,

_/s/ Stacey K. Grigsby_

Jin Hee Lee, DC Bar No. 1740850
Gabriel Diaz, DC Bar No. 991618
Donya Khadem, DC Bar No. 1719557
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
jlee@naacpldf.org
gdiaz@naacpldf.org
dkhadem@naacpldf.org

Leah Wong
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
lzwong@naacpldf.org

Camilla B. Taylor, DC Bar No. IL0098
Kenneth D. Upton, Jr., DC Bar No. 1658621
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
3656 North Halsted Street
Chicago, IL 60613
(312) 605-3225
ctaylor@lambdalegal.org
kupton@lambdalegal.org

Jose Idio Abrigo
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(646) 307-7406
jabrigo@lambdalegal.org

Pelecanos
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
800 South Figueroa Street, Suite 1260

Stacey K. Grigsby, DC Bar No. 491197
Sarah E. Harrington, DC Bar No. 219218
Alison DiCiurcio, DC Bar No. 1601410
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
sgrigsby@cov.com
sharrington@cov.com
adiciurcio@cov.com

Nicholas E. Baer, DC Bar No. 1672517
James H. Fitch, DC Bar No. 1780894
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, NY 10018
(212) 841-1000
nbaer@cov.com
jhfitch@cov.com

Los Angeles, CA 90017*
(323) 370-6909
pelecanos@lambdalegal.org

*Address for mailing purposes only