# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL URBAN LEAGUE, et al.,

*Plaintiffs*,

v.

DONALD TRUMP, in his official capacity as
President of the United States, et al.,

*Defendants*,

DO NO HARM,

[*Proposed*] *Intervenor-Defendant*.

No. 1:25-cv-00471-TJK

## REPLY IN SUPPORT OF MOTION TO INTERVENE

This Court can begin and end with permissive intervention. Though Defendants say intervention is "unnecessary," necessity is not the test—or even a relevant factor—under Rule 24(b). Defts.-Opp.1. And though Plaintiffs spend most of their brief expressing confidence in their merits arguments and attacking intervention as of right, they spend less than two pages making less than two arguments against permissive intervention. *See* Pltfs.-Opp.13-14. Neither persuades. Even a cursory review of DNH's proposed answer shows that it has a "defense that shares a common question of law or fact with this action." Pltfs.-Opp.13; *see* Prop.-Ans.32-33. And being forced to answer additional arguments—on the same briefing deadlines already in place—is not "prejudice" or "dela[y]." Pltfs.-Opp.14.

Nor are DNH's crucial contributions merely "policy arguments" against DEI. Pltfs.-Opp.14. Drawing on its years of experience laying the groundwork for these executive orders, DNH will identify many examples of nonprofits engaging in practices that violate federal civil-rights laws—proving both the need for, and the facial constitutionality of, the challenged orders. Specifically, to get their broad requested relief, Plaintiffs must prove that the executive orders are void for vagueness or violate the First Amendment on their face. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194, (2010). Yet DNH has numerous examples of policies that it has challenged—including two cases that it's actively litigating—

that violate federal law and thus provide lawful applications of these executive orders. See Mot.4-5.

Plaintiffs are no exception:

- The National Urban League operates "Project Ready," a career and college preparation program that offers academic and social support, including a mentorship program, for 6th through 12th-graders. See Compl. ¶145; *Project Ready*, NUL (accessed Mar. 10, 2025), bit.ly/41CpGHO; *Fact Sheet* (accessed Mar. 10, 2025), bit.ly/4hsljVE; *Project Ready Mentor* (archived Mar. 20, 2025), bit.ly/43BGUYl. Membership in the program is a prerequisite to receiving a scholarship. *National Urban League Scholarship*, College Board (archived Mar. 10, 2025), perma.cc/64C4-K98J. And the program is funded at least in part "by a grant from the DOJ." Compl. ¶145. But Project Ready is not equally open to everyone; it "specifically targets 11 to 18-year-old African American" students. *Project Ready Mentor*, bit.ly/43BGUYl; see Compl. ¶145 (admitting the program is "predominantly Black and Latino youth").

- The National Fair Housing Alliance runs an "Inclusive Communities Grant Program," which works with local partners to support homeownership (including through preferential home loans) specifically in "Black and Latino communities." *Funding Opportunity Announcement*, NFHA (archived Mar. 10, 2025), perma.cc/DFU6-FSBN; *see Fact Sheet* (archived Mar. 10, 2025), perma.cc/5CNS-MZ32 (listing the program's eligibility criteria). In fact, the grant application explicitly asks applicants to "certify that activities proposed in this application will serve a community in predominantly Black or Latino census tracts OR will serve clients who are Black or Latino." *Grant Application* (archived Mar. 10, 2025), perma.cc/5VW7-HVMX. The grants come from settlement funds NFHA has secured in Fair Housing Act lawsuits. *Funding Opportunity Announcement*, perma.cc/DFU6-FSBN. NFHA's activities, including its Fair Housing Act lawsuits, are funded in significant part by federal contracts and grants. Compl. ¶164 (federal funds account for more than a quarter of NFHA's 2025 budget).

- The AIDS Foundation of Chicago has multiple race-based programs. It runs the "Women Evolving Program," which "streamline[s] entry into health care" exclusively for "Black cisgender and transgender women" who have recently finished serving a criminal sentence. *Reentry Services*, AFC (accessed Mar. 10, 2025), bit.ly/41UbGdK. It runs the "Women's Connection," which increases the accessibility of HIV-related care for "cis and trans women of color." *Grantee Spotlight*, ViiV Healthcare (accessed Mar. 10, 2025), bit.ly/3DlD3US; *see* Compl. ¶192. And it runs the "Learning Circle Collaborative," which provides leadership training, technical assistance, and grants exclusively for "Black-led social service providers and organizations." *Learning Circle Collaborative*, AFC (accessed Mar. 10, 2025), bit.ly/3Fe6usk; *see Making Black History in Chicagoland* (accessed Mar. 10, 2025), bit.ly/3QZhufM. "AFC receives a majority of its funding from HHS and HUD." Compl. ¶185.

This case is much like *Pennsylvania v. DeVos*, 480 F.Supp.3d 47 (D.D.C. 2020), a similar grant of permissive intervention by this Court that DNH stressed but the parties ignore. There, as here, the plaintiffs challenged a federal executive action that sought to end civil-rights violations by federal-funding recipients, *id.* at 55-57, and "advocacy organizations dedicated to promoting" those rights

sought to intervene as defendants to support the challenged action, Interv.Mot.1, *Pennsylvania v. DeVos*, No. 1:20-cv-01468 (D.D.C. June 25, 2020), ECF No. 27. There, as here, the intervenors sought to protect their members' civil rights and present arguments that federal law *required*, rather than merely permitted, the challenged rule, *id.* at 10, 14, while the plaintiffs dismissed the intervenors' arguments as mere "policy interests," Interv.Opp.11, No. 1:20-cv-01468 (D.D.C. July 1, 2020), ECF No. 49. Judge Nichols rejected the plaintiffs' arguments, exercising his "wide latitude" under Rule 24(b) to grant permissive intervention. Minute Order, No. 1:20-cv-01468 (D.D.C. July 6, 2020) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

Because this Court must assume that DNH is right "on the merits in resolving a motion to intervene," *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12), the question is whether Plaintiffs should be able to invalidate three executive orders that lawfully protect DNH and its members and that cut to the heart of its mission—without giving DNH a seat at the table. The answer, as in *Pennsylvania v. Devos*, should be no.

## ARGUMENT

### I.    Permissive intervention is plainly appropriate here.

This "is a classic case for permissive intervention." Mot.2. DNH readily satisfies Rule 24(b)'s criteria. Mot.14-15. And it brings with it a "vast experience" litigating at the intersection of DEI and civil rights, *Building & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. Sept. 23), which will assist this Court in resolving the difficult issues at the center of this litigation. Mot.15-16. Plus, given the "magnitude of this case," it would be beneficial to hear from an organization like DNH that represents the individuals whom the challenged orders are designed to protect. Mot.16 (quoting *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002)).

Neither Plaintiffs nor Defendants convincingly oppose permissive intervention. Contra Defendants, a movant does not have to show that "intervention is [n]ecessary" under Rule 24(b). Defts.-Opp.1. Permissive intervention is a "discretionary enterprise," *Nat'l Children's Ctr.*, 146 F.3d at 1046,

and should be granted where intervention would promote judicial economy, *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940). DNH satisfies that relatively minimal standard. *See* Mot.14-16.

Plaintiffs offer a longer but equally unconvincing response. They accuse DNH of ignoring their "substantive claims … under the First Amendment, Fifth Amendment, Fourteenth Amendment, or Administrative Procedure Act." Pltfs.-Opp.13. But they missed DNH's proposed answer, where it offered affirmative defenses to each one of Plaintiffs' claims. *See* Prop.-Ans.32-33; *see* Mot.11, 13 (detailing how DNH's arguments will differ from the government's likely arguments). And DNH's information about the discriminatory DEI programs it has encountered are not mere "policy arguments." Pltfs.-Opp.14. Those programs are *illegal*. Understanding the prevalence and severity of unlawful DEI practices will assist the Court in deciding whether the orders—which target exactly those practices—pass constitutional and statutory muster. *See Students for Fair Admissions v. Univ. of N. Carolina*, 319 F.R.D. 490, 496 (M.D.N.C. 2017) (permitting intervention where intervenor-defendants offered "evidence of segregation and discrimination" that proved the "need" for the challenged government policy). Courts regularly grant permissive intervention in these circumstances, where the intervenor "can reasonably be expected to contribute to the informed resolutio[n]" of the case's dispositive questions. *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977); *see Building & Realty Inst.*, 2020 WL 5658703 at *11 (permitting intervention where intervenor brought "'specialized expertise and substantial familiarity' to the [a]ction").

The parties do not explain how permissive intervention would "unduly delay or prejudice the adjudication of the[ir] rights." Fed.R.Civ.P.24(b)(3). DNH is prepared to file an opposition to the preliminary-injunction motion by the existing due date (tomorrow), and Plaintiffs' opposition to intervention shows that they're already prepared to respond to DNH's arguments. In fact, intervention would *promote* judicial economy: If the orders are upheld on the constitutional or statutory grounds that DNH plans to emphasize, then many of the unlawful DEI practices that DNH would otherwise

have to pursue in individual lawsuits will be disposed of en masse. Mot.16. And of course, as a discretionary tool, permissive intervention has procedural advantages that Plaintiffs do not dispute. *See Gulf Underwriters Ins. Co. v. The Hurd Ins. Agency*, 2004 WL 2935794, at *2 n.3 (D. Conn. Dec. 16) (granting permissive intervention avoids the "more difficult question" of as-of-right intervention). It avoids, for example, the need to decide whether intervenor-defendants must show Article III standing to secure intervention as of right. *See infra* II.B.

## II.    Do No Harm remains entitled to intervention as of right.

Permissive intervention would confer "all the rights [DNH] would get through as-of-right-intervention." *John Muir Project of Earth Island Inst. v. USFS*, 2024 WL 4753930, at *2 (E.D. Cal. Nov. 12). So the Court "need not" address intervention as of right. *Id.* But DNH has, in any event, also shown that it is entitled to intervene on that basis. Indeed, this circuit's test for intervention as of right is a "liberal" one. *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). And "any doubt concerning the propriety of … intervention should be resolved in [the movant's] favor." *Lloyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 n.9 (11th Cir. 1999). A close case for intervention as of right, in other words, is a good case for intervention (permissive or as of right). *Id.*; *see, e.g.*, *Dorsett v. County. of Nassau*, 283 F.R.D. 85, 90-93 (E.D.N.Y. 2012).

### A.    Do No Harm has satisfied the Rule 24(a)(2) factors.

This Court "must grant a timely motion to intervene that seeks to protect an interest that might be impaired by the action and that is not adequately represented by the parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). Neither Plaintiffs nor Defendants dispute that DNH's motion is "timely." Mot.6 (quoting *Virginia v. Ferriero*, 466 F. Supp. 3d 253, 256 (D.D.C. 2020)). And DNH readily satisfies the remaining factors under Rule 24(a)(2).

**1.** To start, DNH has two legally protected interests that are likely to be affected by the outcome of this litigation. *See* Fed.R.Civ.P.24(a)(2) (requiring "an interest relating" to the action that may, "as a practical matter," be "impair[ed] or imped[ed]" by the action's disposition). One, it has an interest

in defending the executive orders because it supported and laid the groundwork for their enactment. Mot.8-9. And two, it has an interest in protecting its members from adverse discrimination. Mot.9-10. Defendants do not dispute that these interests are significant and implicated by this litigation. Defts.-Opp.1. Plaintiffs do, but their arguments fall short.

Plaintiffs claim that DNH, an organization that opposes race-based discrimination and extreme gender ideologies, has no interest in defending orders that eliminate both. Pltfs.-Opp.6-8. They say DNH's interest is insufficient because (1) it "do[es] not relate to the specific constitutional and APA questions" posed in Plaintiffs' complaint and (2) DNH is not itself regulated by the challenged orders. Pltfs.-Opp.6. But these contentions misunderstand Rule 24(a)(2)'s interest test. To intervene as of right, DNH does not have to assert an interest in the particular legal claims (constitutional, APA-related, or otherwise) raised by Plaintiff's complaint. *See Grainger v. Ottawa County*, 90 F.4th 507, 513-14 (6th Cir. 2024) ("Proposed intervenors need not have a specific legal or equitable interest in the litigation for the interest to qualify as substantial.") (cleaned up); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001) ("The interest of the intervenor is not measured by the particular issue before the court."). Rather, DNH "need[s] only an 'interest' in the litigation," *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003), defined broadly to include any *practical* interest in the outcome, *Luna v. Cegavske*, 2017 WL 6512182, at *3 (D. Nev. Dec. 20). Nor does DNH have to itself be subject to the orders, like Plaintiffs are, to have an interest in their defense. DNH is a beneficiary of these orders and has a mission-critical interest in defending them. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 105 F.R.D. 106, 109 (D.D.C. 1985) (the "interest" test is "liberal").

Which explains why courts consistently allow groups like DNH to intervene as a matter of right in defense of laws and executive actions that relate to the group's core purpose. *See* Mot.9 (collecting cases). DNH has "consistently demonstrated its interest in" eliminating discriminatory DEI practices. *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996). And it "has worked hard over the

years, in various proceedings, to protect that interest" through litigation and by engaging policymakers. *Id.*; *see Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (that a proposed intervenor is "a repeat player in … litigation" on the topic is a "particularly compelling fac[t]" favoring intervention); Mot.8-10 (detailing DNH's litigation and advocacy work). Its interest in this case goes beyond "mere ideological" commitments. *Contra* Pltfs.-Opp.8. And that interest would "suffer if the Government were to lose this case." *Mausolf*, 85 F.3d at 1302.

Plaintiffs also fundamentally misunderstand DNH's second interest: protecting its members from adverse discrimination. This is not, as Plaintiffs describe it, a mere desire to avoid "litigation expenses." Pltfs.-Opp.8. It's an interest in guaranteeing that DNH's members enjoy the full benefit of laws meant to "root out" "racial or ethnic discrimination." *Adams v. Bell*, 711 F.2d 161, 181 (D.C. Cir. 1983). And that interest is surely one that Rule 24 recognizes. *See, e.g.*, *United States v. Yale University*, 337 F.R.D. 35, 38 (D. Conn. 2021) (coalition of students and parents who opposed the use of race in college admissions had sufficient interest to warrant intervention in lawsuit alleging university's admissions practices violated Title VI); *Grutter v. Bollinger*, 188 F.3d 394, 398-99 (6th Cir. 1999) (coalition of students who supported affirmative action had sufficient interest to warrant intervention in defense of race-conscious admissions).

Of course, DNH frequently uses lawsuits to effectuate its interest in protecting its members from discrimination. *See* Mot.4-5, 10-11. But bringing lawsuits is not itself DNH's goal—ending discrimination is. And DNH's motion for intervention referred to the association's lawsuits only to show that the discriminatory DEI programs faced by DNH's members are exactly the kind of "illegal DEI and DEIA policies" covered by President Trump's executive orders. Exec. Order 14173 §1. Plaintiffs' observation that DNH's pending lawsuits will not be immediately affected by the outcome of this action is therefore misplaced. Pltfs.-Opp.9-10. The critical point, rather, is that the kind of programs

that DNH targets in those lawsuits will increase in number and severity if Defendants are not allowed to enforce executive orders that withdraw funding for them. Mot.10.

Plaintiffs address *that* argument in only a single paragraph, but their response fails. *See* Pltfs.-Opp.11. They do not dispute that the orders are likely to reduce discrimination against DNH's members, or that enjoining the orders will enable such discrimination to continue. *See Clinton*, 255 F.3d at 1252 (organization has "a protectable interest in litigation that threatens [the organization's] goals"). They say only that *they* are not responsible for that discrimination. Pltfs.-Opp.11 ("DNH does not assert that it or any of its members" have experienced "discrimination that was specifically the result of Plaintiffs' federally funded services."). But that is irrelevant: DNH seeks to intervene in *defense* of the challenged orders, not to assert a claim against Plaintiffs. And it ignores the broad scope of Plaintiffs' requested relief: they seek an order declaring the orders "unlawful, unconstitutional, and invalid" on their face and enjoining their application in *all* circumstances. Compl.99-100. If they prevail, that order would protect discriminatory DEI programs everywhere, not just Plaintiffs'.

**2.** DNH has also satisfied its "minimal" burden to show that Defendants may not adequately represent its interests in this action. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see* Mot.12-14. Defendants hardly disagree, offering only a conclusory argument that "the Government will provide a fulsome defense of the Executive Orders." Defts.-Opp.1. As fulsome as that defense might be, Defendants never suggest they will raise DNH's unique arguments or defend DNH's "'special interests.'" *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.D.C. Aug. 1). That "silence … is deafening." *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). DNH should not be forced to leave its interests in the hands of a party that is "less than wholeheartedly dedicated" to defending them. *Mosbacher*, 966 F.2d at 44.

Plaintiffs offer a more comprehensive response, but they still neglect to engage with the bulk of DNH's arguments. *See* Pltfs.-Opp.11-13. They offer no response, for example, to DNH's observation that the government is prone to accept a "procedural victory" where DNH would press for a merits ruling that confirms the illegality of the DEI practices targeted by the orders. Mot.13 (quoting *WalMart Stores, Inc. v. Tex. ABC*, 834 F.3d 562, 569 (5th Cir. 2016)). Nor do they rebut DNH's argument that it "should not need to rely" on the government to defend its interests when the personnel and policy positions of the executive branch are subject to constant change. Mot.13 (quoting *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015)).

Plaintiffs' adequate-representation argument also starts from the wrong presumption. Far from assuming that the Department of Justice will "represent the interests of its citizens," Pltfs.-Opp.13, this circuit "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads*, 788 F.3d at 321. Of course, the Department of Justice is capable of—and incentivized to—defend "the constitutionality and legality of government actions." Pltfs.-Opp.12. But its mandate to promote the "public interest," Pltfs.-Opp.13, is precisely what makes the government *unlikely* to adequately defend a private intervenor's "particular interest[s]." *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). Only DNH can guarantee that its members' personal interest in avoiding DEI-based discrimination is adequately represented.

### B.  Do No Harm need not prove Article III standing.

Plaintiffs accuses DNH of ignoring "binding D.C. Circuit precedent" regarding Article III and intervention. Pltfs.-Opp.4. But it is *Plaintiffs* who ignore on-point and binding caselaw. Since the D.C. Circuit last addressed standing requirements for intervenor-defendants in 2015, the Supreme Court has twice held that those seeking to intervene in a case as defendants need not show Article III standing. *Compare Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015), *with Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019), *and Little Sisters of the Poor v. Pennsylvania*, 591

U.S. 657, 674 n.6 (2020). It is "not incumbent" on an intervenor-defendant "to demonstrate its standing." *Bethune-Hill*, 587 U.S. at 663. It would be "error" to require it to do so. *Little Sisters*, 591 U.S. at 674 n.6. Any exception for when intervenor-defendants seek additional or unique relief does not apply here, where DNH seeks the same relief as the government: denial of the preliminary injunction and judgment for Defendants.

When "intervening Supreme Court precedent clearly dictates a departure" from circuit precedent, this Court is obligated to follow the intervening Supreme Court precedent. *Alpine Secs. Corp. v. Fin. Idus. Regul. Auth.*, 121 F.4th 1314, 1334 (D.C. Cir. 2024) (cleaned up). And when the Supreme Court of the United States held that intervenor-defendants do *not* have to show Article III standing, it "eviscerated" the D.C. Circuit's contrary holdings. *Bahlul v. United States*, 77 F.4th 918, 925-26 (D.C. Cir. 2023). Therefore, as at least two more recent decisions have already recognized, this Court is bound to apply the Supreme Court's rule: Intervenor-defendants do not have to satisfy Article III's standing requirements. *E.g.*, *Env't Integrity Project v. Wheeler*, 2021 WL 6844257, at *2 (D.D.C. Jan. 27); *Children's Health Def. v. CDC*, 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024).

Proving the point, Plaintiffs do not cite even a single D.C. Circuit case decided after *Bethune-Hill* and *Little Sisters* that denied a motion to intervene as a defendant for lack of Article III standing. *See* Pltfs.-Opp.4-5. And *Las Americas*, the district court decision on which Plaintiffs chiefly rely, ignored *Bethune-Hill*, the most on-point Supreme Court decision. *See Las Americas Immigrant Advocacy Ctr. v. DHS*, 2025 WL 631864, at *3 (D.D.C. Feb. 26).

All of this makes sense as a matter of first principles. Standing requirements are rooted in the separation of powers. *Lewis v. Becerra*, 111 F.4th 65, 73-74 (D.C. Cir. 2024). By "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court," they "ensure that federal courts do not exceed their authority." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Put differently, Article III standing limits the category of people who can "invoke[e] a court's jurisdiction" and request judicial

relief. *Lewis*, 111 F.4th at 74 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "[O]nly someone who has been actually injured can appropriately call in the courts to examine the propriety of executive action." *Id.* (cleaned up). But those who seek to intervene in already-active litigation as *defendants* are neither "invoking the court's jurisdiction [n]or seeking additional relief." *Children's Health Def.*, 2024 WL 3521593 at *5 n.3. As such, the threat against which Article III standing usually guards—advisory opinions that intrude on executive or legislative authority—is not present. *See California v. Texas*, 593 U.S. 659, 660 (2021).

## CONCLUSION

This Court should grant DNH's motion to intervene and allow it to participate in this case as a defendant.

Dated: March 11, 2025                    Respectfully submitted,

                                         */s/ Cameron T. Norris*
                                         Thomas R. McCarthy (DC Bar #489651)
                                         Cameron T. Norris
                                         Frank H. Chang (DC Bar #1686578)
                                         Paul R. Draper*
                                         CONSOVOY MCCARTHY PLLC
                                         1600 Wilson Boulevard
                                         Suite 700
                                         Arlington, VA 22209
                                         (703) 243-9423
                                         tom@consovoymccarthy.com
                                         cam@consovoymccarthy.com
                                         frank@consovoymccarthy.com
                                         paul@consovoymccarthy.com

                                         *\* pro hac vice application forthcoming*

                                         *Counsel for Do No Harm*

**CERTIFICATE OF SERVICE**

On March 11, 2025, I e-filed this memorandum with the Court via ECF, which will email

everyone requiring service.

Dated: March 11, 2025                          */s/ Cameron T. Norris*
                                               Counsel for Do No Harm