UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL URBAN LEAGUE et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP et al., <br><br> *Defendants*. | Civil Action No. 25-471 (TJK) |

**MEMORANDUM ORDER**

Within days of taking office, President Trump issued three executive orders about "DEI"—diversity, equity, and inclusion. Three nonprofit organizations that support DEI principles brought this lawsuit challenging several aspects of these orders. Eventually, they moved for a preliminary injunction. Less than a week later, "Do No Harm"—a nonprofit dedicated to challenging DEI programs—moved to intervene. The nonprofit plaintiffs and government defendants oppose that request. The Court agrees that intervention is neither required nor warranted at this early stage of the case. At this point, Do No Harm has not shown that the government will inadequately represent its interests, so it cannot intervene as of right. And participation as an amicus, including the opportunity to address the Court at the hearing on the motion for preliminary injunction, will provide Do No Harm an opportunity to present its views without risking undue delay or prejudice. Thus, the Court will deny Do No Harm's motion without prejudice. But it will allow Do No Harm to participate in the preliminary-injunction proceedings as an amicus, and it may renew its motion to intervene after resolution of the preliminary injunction.

**I.    Legal Standard**

The Federal Rules of Civil Procedure provide for both mandatory and permissive

intervention. *See* Fed. R. Civ. P. 24. As for the first, the Court must permit intervention if the proposed intervenor "meets four requirements: (1) it filed a timely motion; (2) it has a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest; and (4) that interest will not be adequately represented by existing parties." *Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015) (internal quotation marks and citation omitted). To "intervene as of right," the proposed intervenor "must satisfy all four elements." *Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003). A proposed intervenor who does not meet those requirements, though, may still seek permissive intervention so long as it files a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In that situation, the Court "must," when "exercising its discretion," "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3); *see also* Wright & Miller, *Fed. Prac. & Proc.* § 1911 ("If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention.").

**II.      Analysis**

    **A.      Do No Harm Is Not Entitled to Intervene as of Right at This Early Stage of the Litigation**

The Court begins and ends its intervention-as-of-right analysis with the fourth required factor: adequate representation. *See Jones*, 348 F.3d at 1019 (affirming district court's decision denying motion on this ground). This requirement is, to be sure, "not onerous." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citation omitted). Nor is the government always (or perhaps even often) an "adequate advocate[] for private parties." *Id.* But Do No Harm still "bear[s] the burden of demonstrating that the" government "will

2

inadequately represent [its] interests." *Aref v. Holder*, 774 F. Supp. 2d 147, 172 (D.D.C. 2011). And doing so requires "something more than speculation as to the purported inadequacy." *Id.* (citation omitted). At this point of the case, Do No Harm has not met that burden.[1]

Do No Harm presses "several arguments" about the government's "inadequacy," but "all are speculative." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 49 (D. Mass. 2015). First, Do No Harm claims that the government will want to "preserv[e] its enforcement discretion" and thus "will not argue that Title VI or other federal non-discrimination laws *require* the government to withdraw funding from DEI initiatives." ECF No. 31 at 13. True, the government does not seem to have pressed this specific argument in District-of-Maryland litigation challenging some parts of the executive orders. *Id.* But that one-case sample size does not mean that the government will not make this argument to defend against this "full-scale challenge" to the executive orders—either at the preliminary-injunction stage or down the road if this case (or the Maryland case) progresses past that point. *Students for Fair Admissions*, 308 F.R.D. at 51. As Do No Harm points out, this case "involves all three of the recent executive orders," ECF No. 31 at 16, and the government may advance different arguments than those it advanced in Maryland.

---

[1] Plaintiffs and Do No Harm debate whether proposed defendant-intervenors must establish standing. *Compare* ECF No. 36 at 9–10, *with* ECF No. 37 at 9–11. This question is academic here given the alternative basis for denying intervention as of right. In any event, defendant-intervenors probably need not clear this bar. Because those "seeking to intervene *as defendants*" are "not invoking the Court's jurisdiction" or "seeking 'relief that is broader than or different from the party invoking the Court's jurisdiction,'" they "are not required to" show "Article III standing." *Envt. Integrity Project v. Wheeler*, No. 20-cv-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Jackson, J.) (cleaned up) (quoting *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)); *see also Child.'s Health Def. v. CDC*, No. 23-cv-431 (TNM), 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024).

More to the point, just because the government might not argue a particular merits theory does not mean that the government will inadequately represent Do No Harm's interests—at least at *this* stage of *this* case. Do No Harm may "disagree[] with [a] litigation strategy" that declines to advance certain arguments; it may (and seems to) believe that pressing a statutory argument about the executive orders is preferable. *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). But that possible divergence is "not sufficient" here, at least now. *Id.* At this point, Do No Harm's interest in arguing a particular merits defense in the preliminary-injunction context is not as weighty as it suggests, in part because the ultimate resolution of the merits is a long way off. Of course, the Court might not even need to address the merits of Plaintiffs' challenges at this stage, because "failure to show a likelihood of irreparable harm" is— "standing alone"—enough to defeat such a motion. *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 96 (D.D.C. 2020) (citation omitted). And in any event, Do No Harm's arguments on the merits in the preliminary-injunction posture could not lead to what it seeks—"a merits ruling that *confirms* the illegality of the DEI practices targeted by the orders." ECF No. 37 at 9 (emphasis added). The most the Court could do to resolve the motion favorably (from Do No Harm's perspective) is deny it because Plaintiffs failed to carry their burden of establishing a *likelihood* of success on the merits—a far cry from "confirming" that specific DEI practices are illegal. After all, as the Supreme Court emphasized recently, the "transient nature of preliminary injunctions" means that they "do not conclusively resolve legal disputes" or "the rights of parties on the merits." *Lackey v. Stinnie*, No. 23-621, 2025 WL 594737, at *4–5 (Feb. 25, 2025) (cautioning against "treating preliminary injunctions as 'tantamount to decisions on the underlying merits'" (citation omitted)).

All that said, the Court will give Do No Harm a chance to provide its perspective by allowing it to raise "any unique arguments" that it "wish[es] to advance" through "*amicus* briefs," "personal declarations," and argument at the preliminary-injunction hearing, as described more fully below. *Students for Fair Admissions*, 308 F.R.D. at 51. Practically, that will put Do No Harm on equal footing with the parties as far as the preliminary-injunction motion goes. And Do No Harm may renew its motion to intervene after the preliminary-injunction proceedings wrap up. So it can argue again down the road that intervention—rather than amicus participation—is necessary to ensure adequate representation of its interests, including its purported interest in a conclusive ruling on the merits of its statutory argument.

Second, and "[r]elatedly," Do No Harm worries that the government would "accept a procedural victory"—say, a win on "Article III standing' grounds—rather than press for a ruling on the merits that Do No Harm seeks. ECF No. 31 at 13. That is a red herring. It is not up to the government (or any potential intervenor) to decide whether the Court rules on jurisdictional grounds. Instead, the Court has an independent obligation to ensure that it has jurisdiction in every case, and of course "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Schindler Elevator Corp. v. WMATA*, 514 F. Supp. 3d 197, 202 (D.D.C. 2020) (citation omitted). So no matter what the government says—or does not say—about standing, the Court would need to provide that "procedural victory" if the Court's *own* analysis of Article III standing requires it, and the government would have no choice but to accept that kind of win. And if Do No Harm suggests that the government will put all its eggs in the standing basket at the expense of merits arguments, that is "speculation" at best. *Aref*, 774 F. Supp. 2d at 172. To reiterate, Do No Harm may advance specific merits theories as an amicus at the preliminary-injunction stage,

and it may renew its motion to intervene after those proceedings if it has a less speculative basis for believing that the government will inadequately represent its interests.

Third, Do No Harm suggests that the Executive branch might change its position—whether because of new personnel or policy preferences—so the government will not adequately represent its interests for that reason. ECF No. 31 at 13. That risk may be real in some cases. Over several years, it is perhaps "not realistic to assume that" government "programs will remain static or unaffected by unanticipated policy shifts." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (citation omitted). Not so here, though, for two reasons.

To begin, nothing suggests that this administration will change its attitude about the challenged executive orders anytime soon. Quite the opposite. As Do No Harm explains, "President Trump" issued the executive orders "[i]n the first two days of his administration" to "ma[k]e it clear that he intends to vigorously enforce federal antidiscrimination laws." ECF No. 31 at 2. Those "orders depart from previous administrations," and Do No Harm offers no reason why the government would suddenly change its tune. *Id.* at 3. Consider the government's reaction to a preliminary injunction that recently enjoined some aspects of the challenged executive orders. In short order, the government has (1) appealed the decision, *see Nat'l Ass'n of Diversity Off'rs in Higher Educ. v. Trump*, No. 25-1189, ECF No. 1 (4th Cir. Feb. 27, 2025); (2) asked the district court to stay its injunction pending that appeal, *see Nat'l Ass'n of Diversity Off'rs in Higher Educ. v. Trump*, No. 25-cv-333 (ABA), 2025 WL 675060 (D. Md. Mar. 3, 2025); and (3) filed an "emergency motion" asking the Fourth Circuit to stay the injunction pending the appeal, *see Nat'l Ass'n of Diversity Off'rs in Higher Educ. v. Trump*, No. 25-1189, ECF No. 13 (4th Cir. Mar. 4, 2025). Those are not the actions of a government ready to soften its defense of the executive orders in the near future.

In addition, the limited nature of the Court's ruling at the preliminary-injunction stage further diminishes any concern about shifting policy winds that might make the government an inadequate representative. The Court recognizes that policy preferences and enforcement priorities can change between presidential administrations—or even within a single administration over time. But as explained, Do No Harm may move again to intervene after the preliminary-injunction stage of this case. And the expedited timeline of these proceedings undermines the idea that the government's commitment to vigorously defending the executive orders is at risk of waning in a way that renders inadequate its representation of Do No Harm's interests. Put another way, if a non-speculative basis for this concern emerges over time, Do No Harm will have a chance to point that out in a renewed motion after resolution of the preliminary-injunction motion.

Finally, Do No Harm mentions elsewhere in its motion that it could not "appeal from an unfavorable judgment if the government" chooses not to unless the Court grants intervenor status. ECF No. 31 at 12. But "speculating about this possibility does not establish inadequacy." *Students for Fair Admission*, 308 F.R.D. at 49. The government's conduct in the Fourth Circuit litigation—which involves *fewer* challenged provisions of the executive orders—shows how "unlikely" that outcome is. *Id.* at 50. And if the government later on seems like it might "fail[] to appeal" an adverse ruling, Do No Harm "could renew [its] motion to intervene" then. *Id.*

In short, Do No Harm has not carried its burden—though a small one—of showing that the government will not adequately represent its interests so far as the preliminary-injunction proceedings go. This case is not one, at least right now, where the government is a "doubtful friend" to an "aspiring intervenor." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 314 (citation omitted). To be sure, the briefing and argument in this case, or other events, might change that dynamic and eventually support the claim that the government inadequately represents Do No Harm's interests.

7

But "at this stage in the litigation," there "is no indication in the record" of a "risk" that the government "will not vigorously defend" the executive orders. *Seminole Nation of Okla. v. Norton*, 206 F.R.D. 1, 10 (D.D.C. 2001).[2] So Do No Harm may not intervene as of right.

### B. The Court Will Not Grant Permissive Intervention Now, but Do No Harm May Participate as an Amicus

"[P]ermissive intervention is an inherently discretionary enterprise." *Cigar Ass'n of Am. v. FDA*, 323 F.R.D. 54, 66 (D.D.C. 2017) (citation omitted). Do No Harm clears the threshold requirements because it timely moved to intervene and offers defenses that share common factual or legal questions with the "main action." Fed. R. Civ. P. 24(b)(1)(B); *see also* ECF No. 31-1 at 32–33 (Do No Harm's proposed answer asserting five defenses to Plaintiffs' claims). But exercising its "wide latitude" in evaluating Do No Harm's request, the Court will decline to grant permissive intervention—at least for now. *Cigar Ass'n of Am.*, 323 F.R.D. at 66.

To begin, it is unclear whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Do No Harm emphasizes that it will comply with the briefing schedule for the preliminary-injunction hearing and that any

---

[2] *Crossroads* and cases like it do not stand for the idea that the government is *always* an inadequate representative of a private entity's interests. There, the FEC had dismissed an administrative complaint against the intervenor—but only after the FEC's "legal department" had "recommended the Commission 'find reason to believe'" that it had "violated" federal law, and only after the Commission itself split three to three on the vote. *Crossroads*, 788 F.3d at 315. The district court denied the intervenor's request to join a challenge to the FEC's dismissal, but the D.C. Circuit reversed. *Id.* at 321. The FEC and intervenor, after all, "disagree[d] about the extent of the Commission's regulatory power, the scope of the administrative record, and post-judgment strategy." *Id.* More than that, the FEC "could seek to regulate" the intervenor "directly and immediately after its dismissal order is revoked"—a salient concern given that the "underlying issues before the district court" were "the under-enforcement of federal law and the authority of the FEC." *Id.* Those circumstances, then, made the government a "doubtful friend" and inadequate representative. *Id.* But adequacy of representation—even in cases involving the government—turns on the "nature of the case currently before the Court." *Seminole Nation*, 206 F.R.D. at 10. And here, the Court finds that the government adequately represents Do No Harm's interests for now.

argument time it receives can either come at the government's expense or be added as extra time for Plaintiffs. *See* ECF No. 31 at 2, 7. But the inquiry is not so limited. Rather, Rule 24(b) "captures 'all the possible drawbacks of piling on parties.'" *Students for Fair Admissions*, 308 F.R.D. at 52 (quoting *Mass. Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997)). Those downsides include, for example, the "concomitant issue proliferation and confusion" that might "result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention." *Id.* (quoting *Mass. Sch. of L. at Andover*, 118 F.3d at 782). So while permissive intervention might not create significant delay or prejudice for purposes of preliminary-injunction proceedings, adding Do No Harm as a "full-blown part[y]," *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018), could "delay the *ultimate* resolution of this case" by "complicat[ing] proceedings, lengthen[ing] the discovery process," and "add[ing] expense," *Students for Fair Admissions*, 308 F.R.D. at 52 (emphasis added).

Given that uncertainty about how intervention will affect this litigation all the way to its conclusion, the Court will permit Do No Harm to participate in the preliminary-injunction proceedings as an amicus rather than intervenor. With this status, Do No Harm will have "ample opportunity" to "aggressively defend" the executive orders. *Cigar Ass'n of Am.*, 323 F.R.D. at 66. Its "views . . . will receive a full hearing," and Do No Harm can "make . . . known to the court" if it believes that the government is not "adequately defend[ing]" the challenged executive orders. *Id.* Do No Harm's participation as a party in the preliminary-injunction proceedings, then, "is not essential for the 'just and equitable adjudication of the legal question[s] presented.'" *Id.* (quoting *Sierra Club*, 308 F.R.D. at 12). For these reasons, the Court declines to grant Do No Harm's permissive-intervention request. *See id.*; *cf. Mayor & City Council of Baltimore v. ATF,* 738 F. Supp. 3d 1, 13 (D.D.C. 2024) (denying intervention request because "under these circumstances,

9

permissive intervention would serve no meaningful purpose—or at least no purpose that is not served equally well by permitting [the proposed intervenor] to participate as an amicus").

As for its amicus rights, Do No Harm may file a brief setting out its views on Plaintiffs' request for a preliminary injunction. If Do No Harm chooses to do so, it must file that brief by tomorrow, March 13, 2025, a date that does not appear to pose a problem for it. The Court will also permit Do No Harm ten minutes of argument time at the preliminary-injunction hearing scheduled for March 19, 2025. All told, this "amicus status" is "sufficient for" Do No Harm "to present [its] views and arguments" for purposes of the preliminary-injunction proceedings. *Students for Fair Admissions*, 308 F.R.D. at 52.

### III.   Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Do No Harm's Motion to Intervene, ECF No. 31, is **DENIED WITHOUT PREJUDICE**. It is further **ORDERED** that Do No Harm may participate as an amicus curiae consistent with this Memorandum Order.

   **SO ORDERED.**

                                              /s/ Timothy J. Kelly
                                              TIMOTHY J. KELLY
                                              United States District Judge

Date: March 12, 2025