A

FILED: March 14, 2025

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-1189
(1:25-cv-00333-ABA)

NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER EDUCATION; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; RESTAURANT OPPORTUNITIES CENTERS UNITED; MAYOR AND CITY COUNCIL OF BALTIMORE, MARYLAND,

    Plaintiffs - Appellees,

  v.

DONALD J. TRUMP; DOROTHY FINK; DEPARTMENT OF HEALTH AND HUMAN SERVICES; DEPARTMENT OF EDUCATION; DENISE CARTER; DEPARTMENT OF LABOR; VINCENT MICONEI; DEPARTMENT OF INTERIOR; DOUG BURGUM; DEPARTMENT OF COMMERCE; JEREMY PELTER; DEPARTMENT OF AGRICULTURE; GARY WASHINGTON; DEPARTMENT OF ENERGY; INGRID KOLB; DEPARTMENT OF TRANSPORTATION; SEAN DUFFY; DEPARTMENT OF JUSTICE; JAMES MCHENRY; NATIONAL SCIENCE FOUNDATION; SETHURAMAN PANCHANATHAN; OFFICE OF MANAGEMENT AND BUDGET; MATTHEW VAETH,

    Defendants – Appellants.

------------------------------------

AMERICAN CENTER FOR LAW AND JUSTICE,

    Amicus Supporting Appellant.

ORDER

Pending before the court is the government's Motion for a Stay Pending Appeal. The case concerns two Executive Orders that instruct executive agencies to end "diversity, equity, and inclusion" (or "DEI") programs within federal grant and contract processes. *See* Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025). The plaintiffs—the Mayor and City Council of Baltimore, Maryland and three national associations—moved to preliminarily enjoin the government's enforcement of the Orders, challenging the constitutionality of three of the Orders' provisions under the First and Fifth Amendments.

The district court found the provisions likely unconstitutional and issued a nationwide injunction barring defendants from enforcing those provisions against both the plaintiffs and "similarly situated non-parties." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, --- F. Supp. 3d ---, 2025 WL 573764, at *29 (D. Md. Feb. 21, 2025). After the government appealed that injunction to this Court, the district court entered an order clarifying that its preliminary injunction "applies to and binds Defendants . . . as well as other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, --- F. Supp. 3d. ---, 2025 WL 750690, at *4 (D. Md. Mar. 10, 2025). The government now seeks a stay of the district court's preliminary injunction, or asks that it be limited only to the plaintiffs and named defendants.

Having reviewed the record, the district court's opinion, and the parties' briefing, we agree with the government that it has satisfied the factors for a stay under *Nken v. Holder*, 556 U.S. 418, 426 (2009).

2

We therefore grant the government's motion for a stay of the preliminary injunction. The Clerk will set an expedited briefing schedule after consultation with the parties.

Entered at the direction of Chief Judge Diaz, with the concurrence of Judge Harris and Judge Rushing.

DIAZ, Chief Judge, concurring:

I'm satisfied for now that the government has met its burden justifying a stay of the district court's injunction pending appeal.[1] So I join in the order granting the government's motion and in Judge Harris's separate opinion explaining why. But I'm compelled to write separately to address what seems to be (at least to some) a monster in America's closet—Diversity, Equity, and Inclusion initiatives.

The Executive Orders charge that DEI (and the related DEIA, which also denotes Accessibility) policies include "dangerous, demeaning, and immoral race- and sex-based preferences" that "deny, discredit, and undermine the traditional American values of hard work, excellence, and individual achievement in favor of an unlawful, corrosive, and pernicious identity-based spoils system." *See* Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025). The Orders seek to terminate all "'equity-based' grants or contracts" that apparently have led to "immense public waste and shameful discrimination." Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025). But neither Order ever defines DEI or its component terms.[2]

---

[1] Like my colleague, I too reserve judgment on how the administration enforces these executive orders, which may well implicate cognizable First and Fifth Amendment concerns. *See* Concurring Op. at 7–8 (Harris, J., concurring). I likewise reserve judgment on the extent to which the government relies on the Orders' savings clause provisions as it enforces the Orders' directives against federal contractors, grantees, and private entities. *See, e.g.*, *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239–40 (9th Cir. 2018) (declining to give effect to savings clause where that clause "in [] context" would "override clear and specific language," and render "judicial review a meaningless exercise").

[2] As a result, it's unclear what types of programs—formal or informal—the administration seeks to eliminate, and it could not respond to the district court's
(Continued)

4

And despite the vitriol now being heaped on DEI, people of good faith who work to promote diversity, equity, and inclusion deserve praise, not opprobrium. For when this country embraces true diversity, it acknowledges and respects the social identity of its people. When it fosters true equity, it opens opportunities and ensures a level playing field for all. And when its policies are truly inclusive, it creates an environment and culture where everyone is respected and valued. What could be more American than that?

Under the most basic tenets of the First Amendment, there should be room for open discussion and principled debate about DEI programs, and whether its corresponding values should guide admissions, hiring, scholarship, funding, or workplace and educational practices. And all Americans should be able to freely consider how to continue empowering historically disadvantaged groups, while not "[r]educ[ing]" the individuals within those groups "to an assigned racial [or sex-based] identity."[3]

For almost 250 years, this nation's North Star has been the self-evident truth, "that all men are created equal." The Declaration of Independence para. 2 (U.S. 1776). Even when we have fallen short—badly at times—we have stood up, made amends, and moved

---

hypotheticals about the same. *See Nat'l Ass'n of Diversity Officers in Higher Educ.*, 2025 WL 573764, at *22. At this preliminary stage of the litigation, where the Orders only purport to direct executive policy and actors, we don't find vagueness principles outcome determinative. But I repeat that agency action that goes beyond the narrow scope set out in this motion could implicate Fifth Amendment vagueness concerns.

[3] *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 795, 797 (2007) (Kennedy, J., concurring in part and concurring in the judgment).

forward. But a country does itself no favors by scrubbing the shameful moments of its past. Because while history may be static, its effects remain.

From boardrooms to courtrooms to operating rooms to classrooms, previously marginalized Americans are thriving in spaces long closed to them. And we are the better for it. Yet despite this success—or because of it—we owe it to ourselves to continue forging conversations that may help us achieve that "more perfect Union." U.S. Const. prbl.

*****

As with most monsters in the closet, what lurks is but a mere shadow, for which the remedy is simply light.

6

PAMELA HARRIS, Circuit Judge, concurring:

I concur in the order granting the government's motion for a stay pending appeal. This is a difficult case that will benefit from more sustained attention than we can give it in the present posture. But for now, I believe the government has shown a sufficient likelihood of success to warrant a stay until we can hear and decide its appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

As the government explains, the challenged Executive Orders, on their face, are of distinctly limited scope. The Executive Orders do not purport to establish the illegality of all efforts to advance diversity, equity or inclusion, and they should not be so understood. Instead, the so-called "Certification" and "Enforcement Threat" provisions apply only to conduct that violates existing federal anti-discrimination law. Nor do the Orders authorize the termination of grants based on a grantee's speech or activities outside the scope of the funded activities. Rather, the "Termination" provision directs the termination of grants, subject to applicable legal limits, based only on the nature of the grant-funded activity itself. On this understanding, the government has shown the requisite likelihood that the challenged provisions do not on their face violate the First or Fifth Amendment.

But my vote to grant the stay comes with a caveat. What the Orders say on their face and how they are enforced are two different things. Agency enforcement actions that go beyond the Orders' narrow scope may well raise serious First Amendment and Due Process concerns, for the reasons cogently explained by the district court. *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2025 WL 573764, --- F. Supp. 3d --- (D.

7

Md. Feb. 21, 2025).  This case, however, does not directly challenge any such action, and I therefore concur.

Finally, my vote should not be understood as agreement with the Orders' attack on efforts to promote diversity, equity, and inclusion.  In my view, like Chief Judge Diaz's, "people of good faith who work to promote diversity, equity, and inclusion deserve praise, not opprobrium."  *See* Concurring Op. at 5 (Diaz, C.J., concurring).  I appreciate Chief Judge Diaz's concurrence and share his sentiments.

RUSHING, Circuit Judge, concurring:

I concur in the order granting the government's motion for a stay pending appeal. The scope of the preliminary injunction alone should raise red flags: the district court purported to enjoin *nondefendants* from taking action against *nonplaintiffs*. *Cf.*, *e.g.*, *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024) (mem.). But, more than that, the judges of this panel unanimously agree that the entire substance of the preliminary injunction must be stayed, not just trimmed back in scope. That's because the government has made a "strong showing" that it "is likely to succeed on the merits" and that the district court erred in concluding otherwise. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted). In other words, the government is likely to succeed in demonstrating that the challenged provisions of the Executive Orders—all of which are directives from the President to his officers—do not violate the First or Fifth Amendments.

In addition, as Judge Harris rightly points out, this case does not challenge any particular agency action implementing the Executive Orders. Yet, in finding the Orders themselves unconstitutional, the district court relied on evidence of how various agencies are implementing, or may implement, the Executive Orders. That highlights serious questions about the ripeness of this lawsuit and plaintiffs' standing to bring it as an initial matter. Ripeness and standing doctrines "prevent the judicial process from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), by keeping courts within their "province"—deciding "the rights of individuals" in actual controversies, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). Ignoring these limits on judicial power results in courts becoming "virtually continuing monitors of

9

the wisdom and soundness of Executive action." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (internal quotation marks omitted).

We must not lose sight of the boundaries of our constitutional role and the imperative of judicial impartiality. Any individual judge's view on whether certain Executive action is good policy is not only irrelevant to fulfilling our duty to adjudicate cases and controversies according to the law, it is an impermissible consideration. A judge's opinion that DEI programs "deserve praise, not opprobrium" should play absolutely no part in deciding this case. *Supra*, at 5, 8.