UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL URBAN LEAGUE, et al.,

    *Plaintiffs,*

v.

DONALD J. TRUMP, et al.,

    *Defendants.*

Civil Action No. 25-cv-00471

**Supplemental Declaration of Marc Morial**

I, Marc Morial, declare as follows:

1. I am President and Chief Executive Officer ("CEO") of the National Urban League ("NUL") and have held this position since 2003.

2. On February 27, 2025, I executed a Declaration (ECF No. 29-2) in support of Plaintiffs' Motion for a Preliminary Injunction, filed on February 28, 2025 (ECF No. 29) to prevent Defendant agencies from enforcing Executive Order No. 14151, titled "Ending Radical and Wasteful Government DEI Programs and Preferencing", Executive Order No. 14168, titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," and Executive Order 14173, titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" (the "Executive Orders").

3. Since executing that Declaration on February 27, 2025, I learned that NUL has had a federal grant from the Environmental Protection Agency (EPA) suspended. I am submitting this supplemental declaration to inform the court of this recent development and the negative impact it has had on NUL.

4. On January 14, 2025, NUL won a $500,000 grant from the EPA to support its

1

Urban Environmental Justice Collaborative Program.

5.  The NOA for the Urban Environmental Justice Collaborative Program is attached as Exhibit A.

6.  NUL applied for this funding through a competitive grant process back in 2023 to launch a community-centered project aimed at enhancing climate resilience within Black communities disproportionately affected by climate-related disasters. The project will seek to understand residents' biggest preparedness vulnerabilities regarding extreme weather and climate change. Sub-granted NUL affiliates will facilitate opportunities for meaningful input and involvement from environmentally overburdened communities in their cities through listening sessions, townhalls, and surveying. The project period for this grant is supposed to run from January 15, 2025, through January 14, 2028.

7.  I recently learned that on March 12, 2025, my finance team attempted to draw down funds from our EPA grant using the ASAP federal payment system. But when they tried, they were unable to draw down funds.

8.  The finance team at NUL reached out to a representative of the ASAP federal payment system and the representative responded that the account associated with the EPA grant was suspended, and that ASAP did not have further information about the suspension. The ASAP representative also told NUL it would need to reach out to the EPA to learn more.

9.  The news of this suspension has negatively impacted NUL's programmatic operations. We learned about the suspension only when we tried to draw down funds. We have yet to receive any notice alerting us to suspension or providing a reason for the suspension from the EPA. Right now, we cannot access these funds, funds we won through a competitive grant process, and which we are supposed to receive through 2028.

10. This suspension is devastating to NUL, our affiliates, and the communities we planned to serve with the grant. Without access to this essential funding stream, we simply cannot continue our work with respect to the Urban Environmental Justice Collaborative Program. The program will cease to exist.

11. The most severe harms from climate change fall disproportionately upon underserved communities who are least able to prepare for, and recover from, heat waves, poor air quality, flooding, and other impacts. As a result, they are at higher risk of climate-related health issues including respiratory and cardiovascular disease, heat stroke, and cancer. For years, communities of color have had to struggle through the everlasting effects of structural racism, the legacy of enslavement and socioeconomic factors like redlining, segregation, and poverty, without considering that climate change is likely to exacerbate these existing racial disparities.

12. NUL and its affiliates have already expended significant resources to prepare for the Urban Environmental Justice Collaborative Program. We have already built out organizational capacity, adjusted organizational priorities, and shifted resources to accommodate the work we anticipated doing under this grant. Without these funds, the Urban Environmental Justice Collaborative Program cannot exist, and the communities NUL planned to serve with these funds will no longer benefit from our organization's expertise and assistance. This suspension harms not only our organization, but the vulnerable communities the government sought to support in initially awarding us the now suspended $500,000 award.

13. Given the lack of communication from the EPA regarding the suspension, the uncertainty NUL was already facing because of the challenged Executive Orders (as described in my first Declaration) has been exacerbated.

14. Given that the explicit purpose of this grant is to advance climate resilience

in predominantly Black communities that have been disproportionately impacted by climate-related health issues because of systemic racism, NUL is concerned that the suspension of its EPA award is because of the Anti-Diversity Orders. The "Equity Termination Provision" of the Anti-Diversity 1 Order, for example, explicitly calls for the termination of "equity-related" grants or contracts. Further, the Anti-Diversity 1 Order also includes language that makes clear the Administration disfavors not only "equity-related" grants, but also "environmental justice programs, services, or activities since January 20, 2021." Given the lack of definitions in the challenged Orders and the vagueness of terms such as "equity- related", we have no way of knowing whether the Urban Environmental Justice Collaborative Program was suspended because of these provisions or what we can even do to move the program forward.

15. NUL relies on federal funding and has relied on federal funding since the 70s. Experiencing the suspension of the EPA grant has heightened the concerns and challenges we are already facing. Enforcement of these Orders against us is not only imminent but is clearly already occurring. Considering that, we are caught between a rock and a hard place. Do we continue to do what we have been doing for over one hundred years, which is demand diversity, equity, inclusion, and accessibility, including for transgender people, in education, the workforce, healthcare, entrepreneurship, and housing, or do we recast our work to combat financial harm to our organization and to prevent the reduction of staff? These are the kinds of questions we are currently expending scarce resources to grapple with because of the challenged Executive Orders. To make matters worse, the lack of definitions and clarity in the Executive Orders makes it impossible for us to understand what we can even do to comply.

16. I am concerned that the EPA grant is just the first of many existing federal grants NUL will no longer be able to draw funds from. My concern is made even more reasonable now

that the U.S. Court of Appeals stayed the nationwide injunction in *Diversity Officers v. Trump*, although we learned of the suspension of our EPA funding during a period when the injunction still applied.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: March 16, 2025                                                  Respectfully submitted,

                                                                                        Marc Morial