**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as<br>President of the United States, et al.,<br><br>*Defendants.* | No. 1:25-cv-00471-TJK |

**DO NO HARM'S [PROPOSED] AMICUS BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Authorities ......................................................................................................................... ii

Introduction, Interest & Summary of Argument ....................................................................... 1

Argument ............................................................................................................................................ 2

    I.   The orders cannot be vague because they clearly apply to Plaintiffs.............................. 3

    II.  The First Amendment does not require the government to subsidize
           discrimination. ............................................................................................................... 7

    III. Equal protection doesn't prohibit the orders; it *requires* them. .................................... 13

Conclusion ......................................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Adams v. Richardson*,
480 F.2d 1159 (D.C. Cir. 1973)................................................................14, 16

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995) .........................................................................................14

*Am. Alliance for Equal Rights v. Fearless Fund Mgmt.*,
103 F.4th 765 (11th Cir. 2024) .........................................................................8

*American Communications Ass'n. v. Douds*,
339 U.S. 382 (1950) ...........................................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................2

*Bob Jones University v. Johnson*,
396 F. Supp. 597 (D.S.C. 1974) ......................................................................15

*Bob Jones University v. United States*,
461 U.S. 574 (1983) ...........................................................................................8

*Brache v. Westchester County*,
658 F.2d 47 (2d Cir. 1981)................................................................................4

*Cammarano v. United States*,
358 U.S. 498 (1959) .........................................................................................11

*Coates v. Cincinnati*,
402 U.S. 611 (1971) ...........................................................................................3

*East Bay Recycling, Inc. v. Cahill*,
2007 WL 2728421 (S.D.N.Y. Sept. 14)..........................................................10

*Gautreaux v. Romney*,
448 F.2d 731 (7th Cir. 1971) .....................................................................14-15

*HIAS, Inc. v. Trump*,
985 F.3d 309 (4th Cir. 2021) .............................................................................9

*Hishon v. King & Spalding*,
467 U.S. 69 (1984).............................................................................................8

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ...........................................................................................3

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010)............................................................................................3, 6

*Interpipe Contracting, Inc. v. Becerra*,
898 F.3d 879 (9th Cir. 2018) ...........................................................................10

*Lucero v. Detroit Public Schools*,
  160 F. Supp. 2d 767 (E.D. Mich. 2001)................................................................. 4

*Maher v. Roe*,
  432 U.S. 464 (1977) ............................................................................................. 11

*NAACP, Western Region v. Brennan*,
  360 F. Supp. 1006 (D.D.C. 1973) ....................................................................... 16

*Nat'l Ass'n of Diversity Officers v. Trump*,
  No. 25-1189 (D.C. Cir. Mar. 14, 2025)................................................................. 5

*Nat'l Black Police Ass'n, Inc. v. Velde*,
  712 F.2d 569 (D.C. Cir. 1983)............................................................................. 15

*NEA v. Finley*,
  524 U.S. 569 (1998) ........................................................................................ 10-11

*Norwood v. Harisson*,
  413 U.S. 455 (1973) ......................................................................................... 8, 15

*Nuziard v. Minority Bus. Dev. Agency*,
  721 F. Supp. 3d 431 (N.D. Tex. 2024) ................................................................ 14

*Parker v. Levy*,
  417 U.S. 733 (1974) ............................................................................................... 7

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992) ............................................................................................... 8

*Regan v. Taxation with Representation of Wash.*,
  461 U.S. 540 (1983) ........................................................................................ 10, 12

*Regents of Univ. of Cal. v. Bakke*,
  438 U.S. 265 (1978) ............................................................................................. 14

*Runyon v. McCrary*,
  427 U.S. 160 (1976) ............................................................................................... 8

*Rust v. Sullivan*,
  500 U.S. 173 (1991) ............................................................................................. 10

*SFFA v. Harvard*,
  600 U.S. 181 (2023) ............................................................................................. 14

*Shannon v. HUD*,
  436 F.2d 809 (3d Cir. 1970)................................................................................. 14

*Sierra Club v. Gorsuch*,
  715 F.2d 653 (D.C. Cir. 1983)............................................................................. 10

*U.S. AID v. All. For Open Soc'y Int'l*,
  570 U.S. 205 (2013) ........................................................................................ 11-12

*United States v. Harris,*
    347 U.S. 612 (1954) ............................................................................ 5

*United States v. Poindexter,*
    951 F.2d 369 (D.C. Cir. 1981) .......................................................... 4

*United States v. Robertson,*
    588 F. Supp. 3d 114 (D.D.C. 2022) .................................................. 5

*United States v. Sandlin,*
    575 F. Supp. 3d 16 (D.D.C. 2021) ................................................. 6-7

*United States v. Windsor,*
    570 U.S. 744 (2013) .......................................................................... 14

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) ............................................................................ 2

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) .............................................................................. 5

*Young v. Pierce,*
    628 F. Supp. 1037 (E.D. Tex. 1985) ................................................ 15

*Ysursa v. Pocatello Educ. Ass'n,*
    555 U.S. 353 (2009) .......................................................................... 10

**Statutes**

29 C.F.R. §32.5 .................................................................................... 13

31 C.F.R. §22.5 .................................................................................... 13

34 C.F.R. §106.4 .................................................................................. 13

36 C.F.R. §1211.115 ............................................................................ 13

42 U.S.C. §18116 ............................................................................... 6-7

42 U.S.C. §1981 ............................................................................. 4, 6-7

42 U.S.C. §2000d ...................................................................... 4, 6-7, 14

45 C.F.R. §84.5 .................................................................................... 13

49 C.F.R. §21.7 .................................................................................... 13

**Other Authorities**

*Assurance of Compliance*, U.S. Dep't of Health & Human Servs. (visited Aug. 22, 2025),
    bit.ly/4mZZtw4 ................................................................................. 13

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal
    Government*, Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025)................................. 12-13

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Exec. Order 14173, 90 Fed.
    Reg. 8633 (Jan. 21, 2025) ............................................................. 3, 6-7, 9, 12-13, 15

*Ending Radical and Wasteful Government DEI Programs and Preferencing*, Exec. Order 14151, 90
  Fed. Reg. 8339 (Jan. 20, 2025) .................................................................................. 3, 8, 12, 15

INTRODUCTION, INTEREST & SUMMARY OF ARGUMENT

Do No Harm is a nonprofit membership association with over 10,000 members, including healthcare professionals, students, patients, and policymakers, who believe that medicine should be driven by scientific evidence rather than ideology and that professional opportunities should be allocated based on merit rather than race or gender.[1] DNH writes to emphasize three points in favor of dismissal. DNH made similar arguments when it opposed Plaintiffs' request for a preliminary injunction, and this Court *agreed* with many of those arguments. *See* PI.Amicus (Dkt.40) at 8-25; PI.Op. (Dkt.57) at 35-58 (holding that Plaintiffs are unlikely to show that the challenged executive orders are vague or violate the First Amendment). Yet Plaintiffs' amended complaint does nothing to remedy these fundamental flaws in its case.

**I.** To start, the challenged orders are not unconstitutionally vague. Vagueness is rarely a winning claim; a law is vague only when it prescribes no standard at all. Here, though, the orders provide a clear standard for compliance: existing federal civil rights laws. In any event, as DNH has already pointed out, the orders plainly apply to Plaintiffs' programs. *See* PI.Amicus.17-18. So even if the laws were vague in some *other* application, they are not vague here.

**II.** Plaintiffs' First Amendment arguments likewise fall flat. There is no First Amendment right to discriminate, so an order withdrawing federal funds from discriminatory

---

[1] No counsel for any party authored this brief in whole or in part, and no party or counsel for any party contributed money to fund the preparation or submission of this brief. Fed.R.App.P.29(a)(4)(E). Do No Harm previously filed a corporate disclosure statement stating that no corporation owns 10% or more of its stock. *See* Fed.R.App.P.29(a)(4)(A), 26.1; Doc.32.

programs cannot possibly violate the First Amendment. That aside, the First Amendment does not require the government to subsidize even constitutionally protected speech. The government—including the President—is allowed to have policy priorities, and it is allowed to spend money according to those priorities. Plaintiffs have not alleged a First Amendment violation simply because their priorities differ from the President's.

**III.** Finally, Plaintiffs' contention that the orders run afoul of equal protection principles gets things fundamentally backwards. The orders don't *violate* federal anti-discrimination law; they are *required* by it. The Fifth Amendment and statutes like Title VI prohibit the government from paying private entities to discriminate. The challenged orders simply follow through on the government's anti-discrimination obligations.

## ARGUMENT

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Though the Court must accept a complaint's factual allegations as true, "mere conclusory statements … do not suffice." *Id.* at 678. And the Court need not accept a plaintiff's "legal conclusions." *Id.*

Plaintiffs cannot satisfy this burden. Especially so because their complaint "bring[s] facial rather than as-applied challenges." PI.Op.2; *see id.* at 31 (explaining that Plaintiffs cannot convert their facial challenge into an as-applied one merely by claiming that they will benefit from a facial injunction); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (collecting cases) ("Facial challenges are disfavored for several reasons."). Three points in particular require dismissal here: (1) The challenged orders are not vague and in fact clearly apply to Plaintiffs; (2) the orders do not implicate the First Amendment; and (3) federal law *forbids* the use of federal funds to support private discrimination.

2

## I.     The orders cannot be vague because they clearly apply to Plaintiffs.

Plaintiffs' complaint spills much ink arguing that the challenged executive orders are impermissibly vague. But their argument falters at the start because, as Defendants' motion explains, Plaintiffs fail to identify a constitutionally protected interest affected by the orders. MTD (Dkt.70-1) at 17-21. Even if Plaintiffs could identify such an interest, though, vagueness is a demanding standard. It requires showing not just that the challenged law is "imprecise," but that "no standard of conduct is specified at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). The burden is even greater when, as here, plaintiffs bring a facial vagueness challenge. *See* Am.Compl. (Dkt.67) at ¶121; *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982) (such challenges succeed "only if the enactment is impermissibly vague in all of its applications"). Finally, if a challenged order is not vague as applied to a plaintiff, they "'cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010).

Plaintiffs' vagueness argument fails twice over: the challenged orders have many clear applications, and Plaintiffs' unlawful race-based programs are among those clear applications.

**A.** The orders provide a clear standard for compliance: existing federal law. Their explicit purpose is to effectuate "our civil-rights laws … by ending illegal preferences and discrimination." Exec. Order 14173 §1 (Jan. 21, 2025), perma.cc/6LUL-NGJQ ("Restoring Merit Order"); *see* Exec. Order 14151 §1 (Jan. 20, 2025), perma.cc/ATM9-SXUQ ("Ending DEI Order") (putting an end to "illegal and immoral discrimination programs"). To that end, the orders draw a clear distinction between lawful and unlawful practices. And they direct federal officials to terminate funding for *unlawful*, not lawful, practices. PI.Amicus.9-11, 14-16.

Not even Plaintiffs dispute that the orders apply when federally funded programs run afoul of federal law. *E.g.*, PI.Mot. (Dkt.29-1) at 18; Am.Compl.¶126.

Nor do Plaintiffs suggest that federal law is itself unclear. That would be a losing argument. Title VI states clearly that "[n]o person … shall, on the ground of race, color, or national origin, be excluded from participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d (Title VI); *see Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 784 (E.D. Mich. 2001) ("Title VI provisions are not vague and amorphous"). Unfortunately, many public and private entities in the United States continue to operate racially exclusive or otherwise discriminatory programs in violation of federal law. *See* PI.Amicus.14-16. The orders clearly require termination of funds for those programs, which means they have a "core meaning that can be reasonably understood" in the mine run of cases. *Brache v. Westchester County*, 658 F.2d 47, 51 (2d Cir. 1981). And that ascertainable core meaning "necessarily means that the [orders are] not vague." *Id.*; *see United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1981) (same).

Plaintiffs' only retort—which this Court has already found lacking—is to insist that the orders "d[o] not really mean what [they] sa[y]" when they call for an end to unlawful DEI practices. PI.Op.53. They speculate, based on President Trump's supposed "hostility toward DEIA," that there is "a strong likelihood that anything labeled DEIA … may be considered illegal." Am.Compl.¶¶126-28. But that is not what the orders say: they simply require an end to federal funding for discriminatory DEI programs. *See* PI.Op.53; PI.Amicus.10 (explaining that Plaintiffs' "confusion is manufactured" because "the language of the order makes clear that funding will be terminated only for DEI programs that violate federal law"); Order at 7,

4

*Nat'l Ass'n of Diversity Officers v. Trump*, No. 25-1189 (D.C. Cir. Mar. 14, 2025), ECF No. 29 (Harris, J., concurring) ("The Executive Orders do not purport to establish the illegality of all [DEI], and they should not be so understood."). And if the administration *does* enforce a broad view of what counts as unlawful DEI, Plaintiffs will be able to challenge any such action when it happens. PI.Op.53-54. But they don't get to challenge the text of the orders themselves. *Cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (courts enjoin "specified unlawful actions," not "'laws themselves'").

Plaintiffs continue to quibble with some of the orders' other individual terms. They claim, for example, that it is simply "impossible to comprehend" what the orders mean when they call for an end to "equity-related" grants and contracts, the elimination of "DEI and DEIA principles," or the termination of funds "used to promote gender ideology." Am.Compl.¶¶122-25. Plaintiffs' hyperbole aside, all of these terms have a readily ascertainable, if not exact, meaning. *See* PI.Amicus.10-14. And that is all that the Constitution requires. *See United States v. Robertson*, 588 F. Supp. 3d 114, 122 (D.D.C. 2022) (a "vagueness challenge will fail" as long as the challenged provision contains a "'comprehensible normative standard,'" even if that standard is "'imprecise'"). Which is why this Court has already rejected these exact vagueness arguments regarding these exact terms. PI.Op.42-43.

**B.** Plaintiffs' vagueness claim is especially weak because *their* programs clearly fall within the scope of the executive orders. So it does not matter if they can conjure up one or even many "hypothetical cases" in which the orders' exact meaning is unclear. *American Communications Ass'n. v. Douds*, 339 U.S. 382, 412 (1950); *cf. United States v. Harris*, 347 U.S. 612, 618 (1954) ("marginal cases" where "doubts might arise" do not render a statute

unconstitutionally vague). Because they are "'clearly'" covered by the orders, they "'cannot

complain of the vagueness of the [orders] as applied to the conduct of others.'" *Holder*, 561

U.S. at 20.

DNH has already identified a number of Plaintiffs' federally funded activities that are

covered by the orders. *See* PI.Amicus.17-18. Indeed, Plaintiffs themselves suggest that at least

some of these programs are "targeted" by the orders or have *already* "been disrupted" as a

result of the orders. Am.Compl.¶¶218-19, 233.

- The National Urban League operates "Project Ready," a career and college preparation
  program that offers academic and social support, including a mentorship program, for
  6th through 12th-grade students. Membership in the program is also a prerequisite to
  receive the organization's college scholarship. *See* Rasmussen-Decl. (Dkt.40-1) at ¶9.
  And the program is funded at least in part "by a grant from the DOJ."
  Am.Compl.¶¶130, 219. But Project Ready is not equally open to everyone; it
  "specifically targets 11 to 18-year-old African American" students. Rasmussen-Decl.¶9.

- The AIDS Foundation of Chicago has multiple race- and gender-based programs. It
  runs the "Women Evolving Program," which "streamline[s] entry into health care"
  exclusively for "Black cisgender and transgender women" who have recently finished
  serving a criminal sentence. Rasmussen-Decl.¶11. It runs the "Women's Connection,"
  which increases the accessibility of HIV-related care for "Black cisgender and
  transgender women." Am.Compl.¶233. And it runs the "Learning Circle
  Collaborative," which provides leadership training, technical assistance, and grants
  exclusively for "Black-led social service providers and organizations." Rasmussen-
  Decl.¶11. "AFC receives a majority of its funding from HHS and HUD."
  Am.Compl.¶226.

These race-based activities violate federal antidiscrimination laws. *E.g.*, 42 U.S.C. §1981

(right to make and enforce contracts); 42 U.S.C. §2000d (Title VI); 42 U.S.C. §18116

(nondiscrimination in health care). So they are squarely covered by the executive orders. Again,

Plaintiffs have never disputed that the challenged orders withdraw funding for programs that

"violate the civil-rights laws of this Nation." Restoring Merit Order §1. In fact, that is their

"core" application. *United States v. Sandlin*, 575 F. Supp. 3d 16, 30 (D.D.C. 2021). Nor, for that

matter, have Plaintiffs meaningfully disputed that their programs are race-based, unlawful, and therefore clearly subject to the orders' funding termination provisions. *See generally* PI.Reply. (Dkt.44) at 7-14 (making no argument specific to their programs and arguing only that the orders are generally "vague as written").

True, Plaintiffs have responded in conclusory terms that there is "no authority" holding that race-based programs are "unlawful." PI.Reply.3 n.5. But that undeveloped argument ignores the straightforward authority that *does* exist: namely, the Civil Rights Act of 1866, which says that "[a]ll persons" in the United States "shall have the same right … to make and enforce contracts" without regard for race. 42 U.S.C. §1981. In any event, even if privately operated race-based programs are not unlawful in themselves, they become unlawful when they "receiv[e] Federal financial assistance." 42 U.S.C. §§2000d, 18116. And that problem is precisely what the challenged orders are designed to target. *See* Restoring Merit Order §1 ("The Federal Government is charged with enforcing our civil-rights laws. The purpose of this order is to ensure that it does so by ending illegal preferences and discrimination."); *id.* §3(c)(iii) (eliminating "DEI and DEIA principles" from federal funding procedures to "comply with civil-rights laws").

Because Plaintiffs' activities are among the orders' core applications, they cannot "successfully challenge [the orders] for vagueness." *Sandlin*, 575 F. Supp. 3d at 30 (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)).

## II. The First Amendment does not require the government to subsidize discrimination.

Plaintiffs' First Amendment argument fares no better. At bottom, Plaintiffs argue that the executive orders penalize speech based on its viewpoint "primarily by leveraging the

federal funding" that Plaintiffs use to fund their DEI practices. Am.Compl.¶256. But as DNH has already explained and this Court has already held, that claim faces two major stumbling blocks. PI.Amicus.20-23; PI.Opp.45-58. One, the First Amendment does not protect illegal discrimination. And two, even if Plaintiffs' conduct were protected speech, the government does not have to subsidize it.

**A.** The First Amendment, of course, protects speech. It even protects biased speech. But it does not protect discrimination. *Norwood v. Harisson*, 413 U.S. 455, 469-70 (1973); *cf. Runyon v. McCrary*, 427 U.S. 160, 176 (1976) ("'[I]nvidious private discrimination … has never been accorded affirmative constitutional protections.'"). Thus, the Supreme Court has recognized that, while the Constitution might protect someone's right to *believe* in the propriety of racial discrimination, it "does *not* protect the very act of discriminating on the basis of race." *Am. Alliance for Equal Rights v. Fearless Fund Mgmt.*, 103 F.4th 765, 777-79 (11th Cir. 2024) (collecting Supreme Court cases); *see Bob Jones University v. United States*, 461 U.S. 574, 602-04 (1983); *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). Nor does it protect discriminatory acts with an expressive component: "[A]cts are not shielded from regulation merely because they [also] express a discriminatory idea or philosophy." *R.A.V. v. St. Paul*, 505 U.S. 377, 390 (1992).

In other words, Plaintiffs' First Amendment argument fails in its premise. Their DEI programs (to the extent those programs are implicated by the text of the challenged orders) are not protected speech; they are illegal discrimination. Indeed, the challenged orders are clear from the beginning that they are concerned not just with racial discrimination but with *illegal* discrimination in particular. *See* Ending DEI Order §1 (explaining that the prior

administration's "illegal and immoral discrimination programs … en[d]' today"); Restoring Merit Order §1 ("The purpose of this order is to ensure that" the government enforces "civil-rights laws" by "ending illegal preferences and discrimination."); *HIAS, Inc. v. Trump*, 985 F.3d 309, 319 (4th Cir. 2021) (when a law "include[s] a statement of purpose," the remaining provisions should be read "consistent with [that] expressed purpose"). The orders' substantive provisions are equally clear, calling for an end to "illegal discrimination" and "illegal … preferences." Restoring Merit Order §§3, 4(b)(iii). The Certification Provision, the main target of Plaintiffs' First Amendment challenge, *see* Am.Compl.¶¶259-61, 268, focuses on DEI programs "that violate any applicable Federal anti-discrimination laws," Restoring Merit Order §3(b)(iv)(B).

The orders do not trigger First Amendment scrutiny because they do not burden an activity protected by the First Amendment. *See* PI.Op.52-53. So Plaintiffs' First Amendment challenge does not get off the ground.

**B.** The First Amendment claim fails for a second reason. According to Plaintiffs, the challenged orders run afoul of the Constitution because they threaten to withdraw "the federal funding that is key to Plaintiffs' ability to operate." Am.Compl.¶256. At its core, then, Plaintiffs' argument assumes they are constitutionally *entitled* to the funds implicated by the orders. But even if Plaintiffs' DEI- and gender-ideology-related activities are a form of expression covered by the First Amendment, the Constitution does not require the government to subsidize that expression.

Indeed, the Supreme Court has repeatedly held that the government is not required to fund private speech, "rejecting the notion that First Amendment rights are somehow not fully

realized unless they are subsidized by the State." *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 546 (1983) (cleaned up). The First Amendment is a negative restriction on government action, not a positive guarantee of taxpayer money. It "prohibits government from 'abridging the freedom of speech,'" but it does not require the government to affirmatively "promote that speech." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 355 (2009); *see Regan*, 461 U.S. at 549 ("a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right"); *Rust v. Sullivan*, 500 U.S. 173, 193 (1991) (same). The government can therefore withdraw federal funds, just as it can refuse to grant them in the first place, "without triggering constitutional scrutiny." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 897 (9th Cir. 2018).

That rule makes sense. The government—including the President—is allowed to have policy priorities. It is also allowed to spend its money in a manner that reflects those priorities. *See East Bay Recycling, Inc. v. Cahill*, 2007 WL 2728421, at *9 (S.D.N.Y. Sept. 14) ("[T]he executive branch and its agencies are afforded considerable deference … when it comes to setting policy priorities and allocating resources." (citing *Sierra Club v. Gorsuch*, 715 F.2d 653, 658 (D.C. Cir. 1983))); *cf. NEA v. Finley*, 524 U.S. 569, 588 (1998) ("So long as legislation does not infringe on other constitutionally protected rights, Congress has wide latitude to set spending priorities."). And the challenged orders fall comfortably within this broad authority to award or deny subsidies based on their "advantage [to] the public." *Regan*, 461 U.S. at 550. Indeed, federal law has long prohibited race-based decision-making in employment, contracting, and federally funded programs. *See* PI.Amicus.22-23. The challenged orders

implement that promise by directing federal funds away from entities that racially discriminate. *Id.*

Plaintiffs might disagree with the President's spending priorities. But that does not mean they have suffered a constitutional violation. Nor does it mean they can sue to force the President to adopt *different* priorities. Instead, "[a]s a general matter, if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *U.S. AID v. All. For Open Soc'y Int'l*, 570 U.S. 205, 214 (2013). Plaintiffs, in other words, are free continue promoting gender ideology and DEI. They just have to "pay for those activities … out of their own pockets." *Cammarano v. United States*, 358 U.S. 498, 513 (1959).

**C.** Plaintiffs try a couple of tactics to get around this basic First Amendment principle, to no avail. First, they recast the President's policy priorities as unconstitutional "viewpoint and content discrimination." Am.Compl.¶255. But the government may "'selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program.'" *Finley*, 524 U.S. at 588. That is what it *means* to have "spending priorities." *Id.* "In doing so, 'the Government has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other.'" *Id.*; *see Maher v. Roe*, 432 U.S. 464, 475 (1977) (explaining that opting not to fund certain speech as a matter of "policy" is not the same as "direct state interference with a protected activity").

Indeed, when the government imposes a condition on the receipt of federal funds, the only relevant First Amendment limitation is that the condition must relate to the funds themselves. *See* MTD.22-23. In other words, when the government funds a private program, it cannot "leverage [that] funding to regulate speech outside the contours of the [funded]

program itself." *All. For Open Soc'y Int'l*, 570 U.S. at 214-15. But the government *can* decide what kinds of programs it wants to fund in the first place, based on its policy priorities. *Id.* And that is all the challenged orders do here; they "define the limits of the government spending program." *Id.*; *e.g.*, Ending DEI Order §2(b)(i) ("terminat[ing] … 'equity-related' grants or contracts"); Restoring Merit Order §3(c)(ii) (eliminating "references to DEI and DEIA principles" in "Federal acquisition, contracting, grants, and financial assistance procedures"); Exec. Order 14168 §3(e) (Jan. 20, 2025), perma.cc/AYE7-PFZH ("Gender Ideology Order") ("end[ing] the Federal funding of gender ideology"). The government is entitled to decide what it will fund "out of public monies." *Regan*, 461 U.S. at 545.

Second, Plaintiffs target the Restoring Merit Order's so-called Certification Provision, which requires a contract or grant recipient to "certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." Restoring Merit Order §3(b)(iv)(B). According to Plaintiffs, this requirement "penalize[s]" them because it "forc[es] federal grantees and contractors to either self-censor or risk prosecution under the False Claims Act." Am.Compl.¶¶256, 259-60. But that can't be right, for at least two reasons. One, as this Court has already explained, the certification provision implicates the First Amendment only if it "restricts [Plaintiffs'] ability to engage in *protected speech*." PI.Op.52. "Yet neither Plaintiffs nor anyone else have a First Amendment right to violate federal antidiscrimination law." *Id.* And two, if Plaintiffs' argument were correct, then *every* certification requirement would violate the First Amendment. But such requirements are

commonplace: Many federal programs, funding many different activities, require applicants to certify compliance with relevant laws and regulations—including non-discrimination rules.[2]

Perhaps recognizing as much, Plaintiffs make a backup argument that, even if certification requirements are generally constitutional, *this* one isn't because it is "vague and undefined." Am.Compl.¶260. But that's wrong too, for the reasons explained above. *Supra* I.A. A provision asking entities to certify that they do not "violate any applicable Federal anti-discrimination laws" isn't vague, because federal civil rights laws aren't vague. Restoring Merit Order §3(b)(iv)(B). Plaintiffs cannot rescue their losing penalty argument with a losing vagueness argument.

## III. Equal protection doesn't prohibit the orders; it *requires* them.

Finally, Plaintiffs make the counterintuitive claim that the President's orders, which direct an *end* to "discriminatory and illegal" DEI and policies that "har[m] women" by eroding "sex-based rights," exceed the President's statutory and constitutional authority and somehow violate the Equal Protection Clause. Restoring Merit Order §2; Gender Ideology Order §3(b), (f); *see* Am.Compl.¶¶285-332. That is doubly wrong.

To start, the President's power to terminate funding for discriminatory entities is clear. *See* PI.Amicus.23-25. Title VI was enacted with "one fixed purpose: to give the Executive Branch of Government clear authority to terminate federal funding of private programs that

---

[2] For example, many federal agencies require funding recipients to certify compliance with Title IX, *e.g.*, 34 C.F.R. §106.4(a); 36 C.F.R. §1211.115(a), Title VI, *e.g.*, 31 C.F.R. §22.5(a); 49 C.F.R. §21.7(a)(1), and the Rehabilitation Act, *e.g.*, 29 C.F.R. §32.5(a); 45 C.F.R. §84.5(a); *see also, e.g.*, *Assurance of Compliance*, U.S. Dep't of Health & Human Servs. (visited Aug. 22, 2025), bit.ly/4mZZtw4 ("All recipients of federal financial assistance from [HHS] are required to have an 'Assurance of Compliance with Non-Discrimination Laws and Regulations' on file with HHS" stating "that recipient is in compliance with" a suite of non-discrimination laws.).

use race … in a manner that would be prohibited by the Constitution if engaged in by government." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 329 (1978) (Brennan, White, Marshall, & Blackmun, JJ., concurring). It prohibits discrimination "under any program or activity receiving Federal financial assistance" and directs federal agencies "to effectuate" that prohibition through implementing regulations. 42 U.S.C. §§2000d, d-1. Courts have interpreted Title VI to impose an affirmative obligation on federal agencies to withdraw funds from entities who have engaged in racial discrimination. *E.g.*, *Adams v. Richardson*, 480 F.2d 1159, 1161-63 (D.C. Cir. 1973); *Shannon v. HUD*, 436 F.2d 809, 819 (3d Cir. 1970); *Gautreaux v. Romney*, 448 F.2d 731, 737, 740 (7th Cir. 1971).

The Constitution is even more demanding. Separate from the government's statutory obligations under Title VI, the Fifth Amendment flatly prohibits discrimination on the basis of race in the federal government. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217-18 (1995); *United States v. Windsor*, 570 U.S. 744, 774 (2013). That prohibition is "implicated any time the federal government treats people differently because of their race." *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431, 473-74 (N.D. Tex. 2024); *SFFA v. Harvard*, 600 U.S. 181, 213 (2023) (discriminatory programs run afoul of the Constitution even if they are "well intentioned and implemented in good faith"). This plainly includes programs that use race as a factor when deciding who will receive academic, professional, financial, medical, or other benefits. *E.g.*, *Nuziard*, 721 F. Supp. 3d at 449, 497-98 (federal agency violated Fifth Amendment when it used a "racial barrier" to determine which small businesses received "grant opportunities" and other resources).

14

Critically, the government cannot circumvent the Fifth Amendment's ban on racial discrimination by outsourcing the actual operation of discriminatory programs to private actors. It is "'axiomatic that [the government] may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish.'" *Norwood*, 413 U.S. at 465. Indeed, federal courts have repeatedly confirmed this basic principle. The Supreme Court has, for example, held that state governments cannot use state funds to provide textbooks at a private school that admitted students based on race. *Id.* at 463-64. Nor can the government give tax breaks or financial support to educational institutions that discriminate based on race. *Bob Jones University v. Johnson*, 396 F. Supp. 597, 608 (D.S.C. 1974). Nor can it fund discrimination in law enforcement agencies, *Nat'l Black Police Ass'n, Inc. v. Velde*, 712 F.2d 569, 580-83 (D.C. Cir. 1983), or segregation in low-income housing programs, *Gautreaux*, 448 F.2d at 737; *Young v. Pierce*, 628 F. Supp. 1037, 1052 (E.D. Tex. 1985).

Put simply, the government's "constitutional obligation requires it to steer clear, not only of" discriminating itself, "but also of giving significant aid to institutions that practice racial or other invidious discrimination." *Norwood*, 413 U.S. at 467. The government *must* ensure its funds are not going towards discriminatory enterprises. And the executive orders carry out that obligation. They remove race as a factor from federal grants and contracts specifically to "comply with civil-rights laws." Restoring Merit Order §§3(b), 3(c)(ii); *see* Ending DEI Order §2(b)(i).

Given the demands of the Fifth Amendment and Title VI, if the government did not have a policy against discriminatory funding—like the policy set forth in these orders—it would be obligated to create one. *Cf. NAACP, Western Region v. Brennan*, 360 F. Supp. 1006,

1012 (D.D.C. 1973) ("Title VI implements fundamental Fifth and Fourteenth Amendment prohibitions on government support to institutions which practice racial or national origin discrimination."); *Adams*, 480 F.2d at 1162 ("a general policy" of not enforcing Title VI's ban on racial discrimination "is in effect an abdication of its statutory duty").

**CONCLUSION**

This Court should grant Defendants' motion to dismiss.


Dated: August 22, 2025                    Respectfully submitted,

                                          */s/ Cameron T. Norris*
                                          Thomas R. McCarthy (DC Bar #489651)
                                          Cameron T. Norris
                                          Frank H. Chang (DC Bar #1686578)
                                          Paul R. Draper*
                                          CONSOVOY MCCARTHY PLLC
                                          1600 Wilson Boulevard
                                          Suite 700
                                          Arlington, VA 22209
                                          (703) 243-9423
                                          tom@consovoymccarthy.com
                                          cam@consovoymccarthy.com
                                          frank@consovoymccarthy.com
                                          paul@consovoymccarthy.com

                                          *\* pro hac vice*

                                          *Counsel for Do No Harm*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with LCvR.5.1(d) and LCvR.7(o)(4) and is

prepared in a double-spaced format using 13-point Garamond font.

Dated: August 22, 2025                    */s/ Cameron T. Norris*
                                          Counsel for Do No Harm


**CERTIFICATE OF SERVICE**

On August 22, 2025, I e-filed this motion and its attachments with the Court via ECF,

which will email everyone requiring service.

Dated: August 22, 2025                    */s/ Cameron T. Norris*
                                          Counsel for Do No Harm